Slip Op. 05-82

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

**AMERICAN INTERNATIONAL CHEMICAL, INC.**,

Plaintiff,

v.

**UNITED STATES**,

Defendant.

</td><td>

Before: Timothy C. Stanceu, Judge

Court No. 02-00624

</td></tr>
</table>

## OPINION

[On cross-motions for summary judgment pursuant to USCIT Rule 56, summary judgment awarded to plaintiff on claim that four consumption entries liquidated by operation of law, free of antidumping duties]

Dated: July 7, 2005

*Cameron & Hornbostel LLP* (*Dennis James, Jr.*) for plaintiff.

*Peter D. Keisler*, Assistant Attorney General, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, *James A. Curley*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Chi S. Choy*, Office of Assistant Chief Counsel, Bureau of Customs and Border Protection and *Peter G. Kirchgraber*, Office of Chief Counsel for Import Administration, of counsel, for defendant.

Stanceu, Judge:  Plaintiff American International Chemical, Inc. challenges the

reliquidations by the United States Customs Service ("Customs")[1] of four consumption entries of

---

[1] All relevant documents concerning the entries in this action originally were filed with the United States Customs Service.  The United States Customs Service now is renamed the Bureau of Customs and Border Protection.  *See Homeland Security Act of 2002*, Pub. L. No. 107-296, § 1502, 116 Stat. 2135 (2002); *Reorganization Plan for the Department of Homeland Security*, H.R. Doc. No. 108-32 (2003).

potassium permanganate from Spain made in 1986.  Upon reliquidation of each of the four entries, Customs assessed antidumping duties, and interest thereon, at the rate of 5.53 percent *ad valorem*, the rate found by the United States Department of Commerce ("Commerce") to apply to those entries in a remand determination affirmed by this Court.  *See Industrial Quimica del Nalon, S.A. v. United States*, 17 CIT 370 (1993).

Plaintiff moves for summary judgment with respect to the four reliquidations, seeking the refund, with interest, of the antidumping duties and interest collected.  Plaintiff argues that the four entries liquidated by operation of law, free of antidumping duties, pursuant to a 1993 amendment to 19 U.S.C. § 1504(d) (2000).  Under this provision, an entry is deemed to liquidate by operation of law, at the duty rate asserted by the importer at the time of entry, if Customs fails to liquidate the entry within six months of receiving notice of removal of suspension of liquidation.  Plaintiff contends that Customs received such notice electronically, via an e-mail message, on February 2, 2000.  Plaintiff had asserted antidumping duties at the rate of zero at the time the entries were made and, as a result, tendered no cash deposits to cover any estimated antidumping duties that later could have been found to be owing.  A zero antidumping duty deposit rate applied to the four entries because previously, at the conclusion of an administrative review, Commerce had found no dumping margin to exist for potassium permanganate from Spain.

Defendant United States, in a cross-motion for summary judgment, maintains that the 1993 amendment to 19 U.S.C. § 1504(d) does not apply to the four subject entries because the removal of suspension of liquidation occurred prior to the effective date of that amendment, which was December 8, 1993.  Defendant argues in the alternative that even if § 1504(d) were

construed to have been in effect, liquidation by operation of law would not have occurred

because Customs did not receive notice of the removal of suspension, as contemplated by the

amended § 1504(d), until December 26, 2000, and effected, in March and April of 2001, the

original liquidations of each of the four entries, assessing antidumping duties of 16.16 percent *ad*

*valorem*. Defendant contends that the e-mail message authored by Commerce and received by

Customs on February 2, 2000 does not constitute a notice sufficient to trigger application of

§ 1504(d) and urges the court to dismiss this action, allowing the reliquidations, and the attendant

assessment of antidumping duties at 5.53 percent *ad valorem*, to stand.

Plaintiff initiated this action to contest the denial by Customs of its administrative

protests challenging the four reliquidations. The court exercises jurisdiction pursuant to

28 U.S.C. § 1581(a) (2000). The court finds that no genuine issue of material fact exists and

concludes that the subject entries liquidated by operation of law pursuant to 19 U.S.C. § 1504(d),

free of antidumping duties. Accordingly, plaintiff is entitled to a refund of the antidumping

duties and interest thereon that it previously paid, with interest as provided for by law.

### I. BACKGROUND

Commerce published an order assessing antidumping duties on potassium permanganate

from Spain at the rate of 5.49 percent on January 19, 1984. *See Antidumping Duty Order on*

*Potassium Permanganate From Spain*, 49 Fed. Reg. 2,277 (Jan. 19, 1984) ("*Antidumping Duty*

*Order*"). The *Antidumping Duty Order* covered all consumption entries of the subject

merchandise made on or after August 9, 1983, the date on which Commerce published its

preliminary antidumping determination and instructed Customs to suspend liquidation on all

entries of potassium permanganate from Spain. *See id.*; *see also Preliminary Determination of*

*Sales at Less Than Fair Value for Potassium Permanganate From Spain*, 48 Fed. Reg. 36,177 (Aug. 9, 1983).

In February 1984, Commerce, at the request of Asturquímica, S.A. (renamed "Industrial Química del Nalón"), the single known Spanish producer of potassium permanganate engaged in exporting the subject merchandise to the United States, waived the cash deposits of estimated antidumping duties for potassium permanganate entered for consumption on or before April 17, 1984. *See Allowance of Security in Lieu of Estimated Duty Pending Early Determination of Antidumping Duty on Potassium Permanganate From Spain*, 49 Fed. Reg. 6,956, 6,957 (Feb. 24, 1984). Commerce waived the cash deposit requirement, pursuant to section 736(c) of the Tariff Act of 1930, 19 U.S.C. § 1673e(c), upon making the determination to conduct an expedited administrative review of the *Antidumping Duty Order* for shipments of the subject merchandise manufactured by Asturquímica. Because Commerce found no dumping margin to exist for Spanish potassium permanganate manufactured by Asturquímica and entered during the period August 9, 1983 through January 10, 1984, a zero cash deposit rate was established to remain in effect from the date on which the findings of the expedited review were published until the publication date of the final results of the next administrative review. *See Early Determination of Antidumping Duty on Potassium Permanganate From Spain*, 49 Fed. Reg. 18,341, 18,343 (Apr. 30, 1984).

The next administrative review of the *Antidumping Duty Order*, initiated in February 1987 upon request of a domestic interested party, covered consumption entries of potassium permanganate from Spain entered from the period beginning on January 1, 1986 and ending on December 31, 1986 ("period of review"). *See Initiation of Antidumping and Countervailing*

*Duty Administrative Reviews*, 52 Fed. Reg. 5,479 (Feb. 23, 1987). The four consumption entries

at issue in this action occurred within that period of review, American International Chemical

having made one entry at the port of New Orleans on May 5, 1986 and three entries at the port of

Houston on June 5, July 22, and October 16, 1986. Following the administrative review,

Commerce determined the final antidumping duty margin to be 16.16 percent. *See Final Results*

*of Antidumping Duty Administrative Review for Potassium Permanganate From Spain*, 53 Fed.

Reg. 21,504, 21,506 (June 8, 1988) ("*Final Results*").

Industrial Química del Nalón filed an action in this Court challenging the 16.16 percent

antidumping duty margin rate, pursuant to which this Court ordered an injunction suspending

liquidation of the 1986 entries of potassium permanganate from Spain. *See Industrial Quimica*

*del Nalon, S.A. v. United States*, 13 CIT 1055, 729 F. Supp. 103 (1989). After a series of

remands, Commerce determined the final antidumping duty margin rate on potassium

permanganate from Spain to be 5.53 percent, which determination this Court sustained upon

review. *See Industrial Quimica del Nalon, S.A. v. United States*, 17 CIT 370, 373 (1993); *see*

*also Industrial Quimica del Nalon, S.A. v. United States*, 16 CIT 84 (1992); *Industrial Quimica*

*del Nalon, S.A. v. United States*, 15 CIT 240 (1991); *United States v. Industrial Quimica del*

*Nalon, S.A.*, 904 F.2d 44 (Fed. Cir. 1990) (non-published opinion summarily denying appeal of

the decision of this Court); *Industrial Quimica del Nalon, S.A. v. United States*, 14 CIT 143,

732 F. Supp. 1180 (1990). The action was dismissed on May 17, 1993, and the time for filing an

appeal in the United States Court of Appeals for the Federal Circuit to challenge the judgment of

the Court expired on July 16, 1993. *See* 28 U.S.C. § 2645(c) (1988); Fed. R. App. P. 4(a)(1)(B).

Although Commerce was required by statute, 19 U.S.C. § 1516a(e) (1988), to publish notice of

the final judgment of the Court "within ten days from the date of the issuance of the final court

decision," Commerce failed to do so.

On February 2, 2000, nearly seven years after this Court affirmed the remand

determination establishing an antidumping duty margin of 5.53 percent, Commerce sent Customs

an e-mail message addressing entries of potassium permanganate from Spain dating back to early

1984. It is on this e-mail message that plaintiff relies in its argument that Customs received

notice of the removal of the suspension of liquidation more than six months prior to the original

liquidations by Customs of the four entries, which would not occur until 2001. The February 2,

2000 e-mail message from Commerce to Customs stated, *inter alia*, the following:

> 1. Records at the Department of Commerce indicate that there should be no
> unliquidated entries of potassium permanganate from Spain . . . held by Customs
> for antidumping purposes during the period 01/19/1984 through 12/31/1999.
>
> 2. If any Customs import office is suspending liquidation of entries of [potassium
> permanganate from Spain] . . . for antidumping purposes for the period
> 01/19/1984 through 12/31/1999, Customs officers should, within 20 days of
> receipt of this message, report [them to Customs Headquarters]. . . .

*Def.'s Opp'n to Pl.'s Mot. For Summ. J. & Cross-Mot. For Summ. J.* (*"Def.'s Opp'n"*) Attach. 1

at 4b (original font style of all caps altered). The e-mail message included language stating that

"[t]here are no restrictions on the release of this information." *Id.* Customs posted the notice on

the publicly-accessible Customs Electronic Bulletin Board on February 3, 2000. On

December 26, 2000, Commerce issued liquidation instructions erroneously directing Customs to

"assess an antidumping liability of 16.16 percent of the entered value" for all the subject entries.

*Id.* Attach. 3 at 6b. Apparently in response to the erroneous instructions from Commerce,

Customs, in March and April of 2001, liquidated the four entries at issue in this case at the

antidumping duty rate of 16.16 percent plus interest.  *See Compl.* ¶ 16.  Plaintiff protested all four liquidations, challenging the antidumping duty assessments.  Customs denied the protests, and plaintiff contested the protest denials by filing two cases in this Court (Court Nos. 02-00149 and 02-00167) prior to bringing this action.

On September 10, 2001, Commerce published in the Federal Register a notice of amended final results of the administrative review, which stated that the subject entries of potassium permanganate from Spain would be assessed antidumping duties at the rate of 5.53 percent, pursuant to the remand determination affirmed by this Court on May 17, 1993.  *See Notice of Amended Final Results of Antidumping Duty Administrative Review Pursuant to Final Court Decision for Potassium Permanganate From Spain*, 66 Fed. Reg. 47,002 (Sept. 10, 2001).  Customs reliquidated, at 5.53 percent antidumping duty, the Houston entries on January 25, 2002 and the single New Orleans entry on February 1, 2002.  Plaintiff had paid to Customs antidumping duties at the rate of 5.53 percent, and assessed interest, on each of the four entries, in preparation for contesting in this Court the denial by Customs of the protests of the original liquidations.

American International Chemical timely protested the four reliquidations in February 2002, claiming that the entries had liquidated by operation of law at the rate of duty asserted at the time of entry, *i.e.*, at a zero rate of antidumping duty.  After Customs denied the protests on June 17, 2002 (pertaining to the New Orleans entry) and September 17, 2002 (pertaining to the three Houston entries), plaintiff commenced this action to contest the denial of its protests.

## II. STANDARD OF REVIEW

The court reviews *de novo* the denial of an administrative protest under 19 U.S.C. § 1515 (2000). *See* 28 U.S.C. § 2640(a)(1) (2000). Because this case presents no genuine issue as to any material fact, it is appropriately resolved through an award of summary judgment. Summary judgment is appropriate if the submissions of the parties show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

## III. DISCUSSION

In arguing that the four entries at issue liquidated by operation of law at the antidumping duty rate asserted by the importer at the time of entry, *i.e.*, a rate of zero, plaintiff relies primarily on 19 U.S.C. § 1504(d) as amended in 1993 but advances two alternative arguments based on 19 U.S.C. § 1504(b)(2) (1988). Plaintiff's primary argument is that liquidation by operation of 19 U.S.C. § 1504(d) occurred when Customs failed to liquidate the four entries within the six-month period beginning on February 2, 2000, the date on which it received the e-mail message in which Commerce informed Customs that "[r]ecords at the Department of Commerce indicate that there should be no unliquidated entries of potassium permanganate from Spain . . . held by Customs for antidumping purposes during the period 01/19/1984 through 12/31/1999." [2]

---

[2] Because the court agrees with plaintiff that liquidation of the four entries by operation of law occurred pursuant to § 1504(d) as amended in 1993, it does not reach plaintiff's alternative arguments under § 1504(b)(2) (1988). The court notes, however, that both alternative arguments are incorrect. The first argument relies on a contention that the entries liquidated 90 days following the removal of suspension of liquidation, by operation of § 1504(b)(2). Relying on the same provision, the second argument contends that the entries liquidated, at most, four years following the removal of suspension of liquidation. Section 1504(b)(2), however, does not effect a liquidation by operation of law where a suspension of liquidation extending beyond the four-year period for extension of liquidation, as provided for therein, is subsequently removed. *See,*

Plaintiff's argument that liquidation by operation of law occurred under 19 U.S.C. § 1504(d) raises two issues. The first issue is whether, as defendant United States contends, applying that statutory provision to this case would be a retroactive application contrary to the holding of the Court of Appeals for the Federal Circuit in *American Permac*, *Inc. v. United States*, 191 F.3d 1380 (Fed. Cir. 1999). For reasons discussed below, this court concludes that application of §1504(d) as amended in 1993 to the four subject entries would not constitute a retroactive application of that provision. The second issue is whether the February 2, 2000 e-mail message that Commerce sent to Customs constitutes notice of the removal of suspension within the meaning of §1504(d). The court concludes that it does.

A. Applicability of 19 U.S.C. § 1504(d) as Amended by the Customs Modernization Act

Section 504(d) of the Tariff Act of 1930, 19 U.S.C. § 1504(d), was amended by Title VI of the North American Free Trade Agreement Implementation Act (commonly referred to as the "Customs Modernization Act") to establish the provision at issue in this case. *See* Pub. L. No. 103-182, 107 Stat. 2057, 2204, § 641(2)(d) (1993). The amendment made to § 1504(d) by the Customs Modernization Act had an effective date of December 8, 1993, the date of enactment. *See Customs Modernization Act*, Pub. L. No. 103-182, 107 Stat. 2204, § 291. Since the enactment of the Customs Modernization Act on December 8, 1993, 19 U.S.C § 1504(d) has not been amended in a way that is material to this litigation. The provision at issue reads in relevant part as follows:

---

e.g., *Canadian Fur Trappers Corp. v. United States*, 12 CIT 612, 691 F. Supp. 364 (1988), *aff'd*, 884 F.2d 563 (Fed. Cir. 1989).

> [W]hen a suspension required by statute or court order is removed, the Customs
> Service shall liquidate the entry . . . within 6 months after receiving notice of the
> removal from the Department of Commerce, other agency, or a court with
> jurisdiction over the entry. Any entry . . . not liquidated by the Customs Service
> within 6 months after receiving such notice shall be treated as having been
> liquidated at the rate of duty, value, quantity, and amount of duty asserted at the
> time of entry by the importer of record.

19 U.S.C. § 1504(d) (2000).[3] Liquidation of the four entries at issue in this action was suspended by this Court in *Industrial Quimica del Nalon*, 13 CIT at 1055, 729 F. Supp. at 103, and such suspension was removed on July 17, 1993, the day after the time to appeal the final judgment of the Court had expired. *See Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1379 (Fed. Cir. 2002) (holding that suspension of liquidation is removed "when the time for petitioning the Supreme Court for a writ of *certiorari* expire[s]"). Plaintiff contends, and this court agrees, that Commerce's February 2, 2000 e-mail message supplied Customs with notice of the removal of the court-ordered suspension, as prescribed by 19 U.S.C. § 1504(d). Because Customs did not

---

[3] Following enactment of the Customs Modernization Act, 19 U.S.C. § 1504(d) was subsequently amended on December 8, 1994 by striking "When a suspension" and inserting "Except as provided in section 1675(a)(3) of this title, when a suspension". *Uruguay Round Agreements Act*, Pub. L. No. 103-465, 108 Stat. 4809, 4864, § 220(c)(2) (1994); 19 U.S.C. § 1504(d) (1994). The 1994 amendment applied to reviews initiated, pursuant to 19 U.S.C. § 1675, after the enactment of the Uruguay Round Agreements Act on January 1, 1995. Because the underlying administrative review was initiated prior to January 1, 1995, the 1994 amendment does not apply to the four entries subject in this action. The provision was further amended on October 11, 1996 by inserting ", unless liquidation is extended under subsection (b) of this section," after "shall liquidate the entry" and "(other than an entry with respect to which liquidation has been extended under subsection (b) of this section)" after "Any entry". *Miscellaneous Trade and Technical Corrections Act of 1996*, Pub. L. No. 104-295, 110 Stat. 3514, 3516, § 3(a) (1996); 19 U.S.C. § 1504(d) (Supp. V. 1999). Although the 1996 amendment was provided by Congress to apply retroactively with an effective date of December 8, 1993, the modifications it made to 19 U.S.C. § 1504(d) do not alter the court's conclusion in this case because extension of liquidation under § 1504(b) did not occur.

liquidate the entries within six months after receiving this notice, the four subject entries

liquidated by operation of § 1504(d) at the asserted antidumping duty rate of zero.

Defendant contends that the holding of the Court of Appeals for the Federal Circuit in

*American Permac*, 191 F.3d at 1380, precludes this court from applying § 1504(d) as amended in

1993 to the four entries at issue in this action because the suspension of liquidation of the four

subject entries was removed on July 17, 1993, a date prior to the December 8, 1993 effective date

of the 1993 amendment.  The court disagrees.

The issue confronting the Court of Appeals in *American Permac* was whether § 1504(d)

as amended in 1993 applied to effect liquidations of three entries by operation of law even

though a series of events involving those entries occurred prior to the December 8, 1993 effective

date of that provision.  *See id.* at 1381.  Those events included the removal of suspension of

liquidation, notice to Customs by Commerce of the removal of suspension (which had occurred

in October 1989) and the running of the entire six-month period specified in § 1504(d).  *See id.*

The Court of Appeals held that application of the 1993 amendment to § 1504(d) on those facts

would constitute an impermissible retroactive application of the statute.  *See id.*  Had § 1504(d)

as amended in 1993 been held to apply in *American Permac*, even the end result of the procedure

Congress established in the amended § 1504(d)–*i.e.*, the liquidations by operation of law of the

three entries at issue–would have occurred prior to the effective date of the 1993 amendment.

In discussing its holding in *American Permac*, the Court of Appeals, quoting *Travenol*

*Laboratories, Inc. v. United States*, observed that "'the United States Supreme Court has stated,

retroactivity in general is not favored in the law and, accordingly, legislation will be construed to

operate only prospectively unless Congress has clearly expressed a contrary intention.'"

*American Permac*, 191 F.3d at 1381 (quoting *Travenol Labs., Inc. v. United States*, 118 F.3d 749, 752 (Fed. Cir. 1997) (citing in turn *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264, 268 (1994))). "'The determination of whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date.'" *American Permac*, 191 F.3d at 1381 (citing *Travenol Labs., Inc.*, 118 F.3d at 752 (internal quotation omitted)). In determining what event "triggers" application of the amended provision, the court must turn to the express language of the statute. "[W]hen a suspension required by statute or court order is removed, [Customs] shall liquidate the entry . . . within 6 months *after receiving notice* of the removal from [Commerce] . . . . Any entry . . . not liquidated by [Customs] within 6 months *after receiving such notice* shall be treated as having been liquidated at the rate of duty . . . asserted at the time of entry . . . ." 19 U.S.C. § 1504(d) (emphasis added).

The court recognizes that the Court of Appeals, in analyzing the narrow issue decided in *American Permac*, stated that "[t]he 'triggering event' for the running of the 6-month time period under [§ 1504(d) as amended in 1993] . . . is the lifting of the suspension on liquidation." *Id.* This statement, however, must be read in context and in a manner not to conflict with the express language of the statute, under which the receipt by Customs of notice of the removal of suspension, not the removal itself, is the triggering event for the running of the six-month time period. In *American Permac*, the issue before the Court of Appeals was not what event triggers the running of the six-month period provided for in § 1504(d). Rather, the Court of Appeals was confronted with, and decided, the issue whether application of the 1993 amendment to § 1504(d) on the facts pertaining to the entries at issue in that case would cause "an impermissible

retroactive effect because it attaches new legal consequences to events completed before the statute was enacted." *American Permac*, 191 F.3d at 1381. Therefore, the statement by the Court of Appeals that the "triggering event" for the running of the six-month time period is the lifting of suspension is a *dictum*. *See Fujitsu Gen. Am., Inc. v. United States*, 110 F. Supp. 2d 1061, 1076 n.14 (2000), *aff'd on other grounds*, 283 F.3d at 1364 (describing the same statement of the Court of Appeals as *dicta*). That statement does not affect the holding of *American Permac* that it was impermissible to apply § 1504(d) as amended in 1993 when the removal of suspension, the notice of the removal of suspension, the running of the six-month period, and the date of liquidation by operation of law all occurred prior to the effective date of the 1993 amendment.

The facts pertaining to the four entries made by American International Chemical differ fundamentally from those pertaining to the entries at issue in *American Permac*. In the case at bar, all of the events that determine the respective rights of the parties under § 1504(d) as amended in 1993 occurred after the effective date of the 1993 amendment. Those events included not only the end of the six-month period, the conclusion of which causes the liquidation by operation of law of entries affected by the provision, but also the running of the entire six-month period, including the event upon which the period began to run, *i.e.*, the receipt by Customs of notice that the suspension of liquidation was no longer in effect. The court concludes, on these facts, that § 1504(d) as amended in 1993 applies to the four entries at issue and does not do so retroactively.

B.  The February 2, 2000 E-Mail Message Commerce Sent to Customs Constitutes Proper Notice
Pursuant to 19 U.S.C. § 1504(d)

In discussing liquidation by operation of law pursuant to 19 U.S.C. § 1504(d), the Court

of Appeals in *Fujitsu General America, Inc. v. United States* concluded that "in order for a

deemed liquidation to occur, (1) the suspension of liquidation that was in place must have been

removed; (2) Customs must have received notice of the removal of the suspension; and

(3) Customs must not liquidate the entry at issue within six months of receiving such notice."

283 F.3d at 1376.  Plaintiff argues that all three requirements have been met and that the entries

at issue therefore should be deemed to have liquidated by operation of law at the rate asserted by

plaintiff at the time of entry, which rate was zero.  The court agrees.

Following the administrative review of the *Antidumping Duty Order*, during which

review liquidation of the entries subject to the review was suspended by statute, the Court in

*Industrial Quimica del Nalon*, 13 CIT at 1055, 729 F. Supp. at 103, ordered an injunction

suspending liquidation of the entries subject in this action.  The injunction dissolved and

suspension of liquidation was removed on July 17, 1993, the date after which an appeal of the

judgment of the Court regarding the final antidumping duty margin rate became time-barred.  *See*

*Fujitsu Gen. Am., Inc.*, 283 F.3d at 1379; *Hosiden Corp. v. Advanced Display Mfrs. of Am.*,

85 F.3d 589, 590-91 (Fed. Cir. 1996); *Timken Co. v. United States,* 893 F.2d 337, 339-40 (Fed.

Cir. 1990).

The court now turns to the issue of when Customs received notice of the removal of the

suspension of liquidation by Commerce for purposes of 19 U.S.C. § 1504(d).  Plaintiff maintains

that Customs received notice of the removal of the suspension of liquidation via the February 2,

2000 e-mail message from Commerce.  The electronic communication from Commerce to Customs stated that "[r]ecords at the Department of Commerce indicate that there should be no unliquidated entries of potassium permanganate from Spain . . . held by Customs for antidumping purposes during the period 01/19/1984 through 12/31/1999."  *Def.'s Opp'n* Attach. 1 at 4b.  This communication was forwarded to the various port directors of Customs, including those in New Orleans and Houston, on February 3, 2000.  *Def.'s Opp'n* at 3.

Defendant contends that the February 2, 2000 e-mail message did not provide notice sufficient under 19 U.S.C. § 1504(d) because the message "did not state that suspension of liquidation was removed for any entry made during the 16 year period.  Moreover, the e-mail message did not state that judicial review was completed."  *Id.* at 12-13.  Defendant also argues that the e-mail message does not constitute proper notice under § 1504(d) because it "did not inform Customs of the amount of antidumping duty to be assessed against the entries, which is a necessary part of a notice of removal of suspension."  *Id.* at 13.  The e-mail message, defendant maintains, "was part of a larger project undertaken by Commerce to have Customs identify entries [Customs] was holding in suspension that were covered by various antidumping investigations."  *Def's Opp'n* at 15 (citing ¶¶ 2-7 of the *Declaration of Holly A. Kuga*, an Office Director at the Import Administration of Commerce, attached to *Defendant's Opposition*).  In defendant's view, the e-mail message was too ambiguous to constitute notice because it was "susceptible to more than one meaning."  *Id.* at 19.  According to defendant, "[e]ven if there were no unliquidated entries, that would not necessarily mean that suspension was removed because Customs could have liquidated the entries by mistake while suspension was in effect."  *Id*. at 18 (citing *Juice Farms, Inc. v. United States*, 68 F.3d 1344 (Fed. Cir. 1995)).

Whether Commerce's e-mail was a means of seeking information from Customs on entries Customs was "holding in suspension" is of no consequence because the event that results in application of § 1504(d) is the receipt by Customs of notice of the removal of suspension of liquidation. Section 1504(d) does not specifically address the issue of what constitutes adequate notice. The provision sets forth the requirement that Customs liquidate entries within six months after the receipt of notice of the removal of suspension of liquidation and specifies the legal consequences of Customs' failure to do so. *See* 19 U.S.C. § 1504(d) (2000). The Court of Appeals recently stated that in order "[t]o be sufficient for purposes of § 1504(d), the 'notice' must be 'unambiguous' that the suspension of liquidation has been lifted, but does not need to include specific liquidation instructions from Commerce to Customs." *NEC Solutions (Am.), Inc. v. United States*, No. 04-1085, slip op. at 6 (Fed. Cir. June 10, 2005).

While not explicitly requiring publication of notice of the removal of suspension of liquidation, the Court of Appeals has also discussed publication as a hallmark of proper notice under § 1504(d). For example, the Court of Appeals in *International Trading Co. v. United States* stated that "the date of publication [of the statutory lifting of suspension] provides an unambiguous and public starting pointing for the six-month liquidation period" provided for in § 1504(d). 281 F.3d 1268, 1275 (Fed. Cir. 2002). In *Fujitsu General America*, the Court of Appeals fully endorsed the language of the *International Trading Co.* Court and further stressed that "[i]t is just as important that there be 'an unambiguous and public starting point for the six-month liquidation period' under the[] circumstances [of a court-ordered lifting of suspension] as it is when liquidation of entries is suspended pending an administrative review and thereafter the suspension is removed. . . ." 283 F.3d at 1381-82. In light of the recent language of the Court of

Appeals in *NEC Solutions*, and that in *Fujitsu General America* and *International Trading Co.*, the court will examine whether the February 2, 2000 e-mail message by Commerce to Customs was unambiguous for purposes of § 1504(d). While recognizing that publication of a notice from Commerce to Customs regarding the removal of suspension of liquidation is not specifically required by § 1504(d) or precedent, the court will also discuss the effect of posting such notice to the Customs Electronic Bulletin Board.

1. The February 2, 2000 E-Mail Message Commerce Sent to Customs Was Unambiguous

Unambiguous notice is such notice "that a reasonable Customs official, with knowledge in these matters, would have read" and would have understood as signifying that Commerce or a court had removed the suspension of liquidation on the subject merchandise. *NEC Solutions (Am.) Inc. v. United States*, 27 CIT ___, 277 F. Supp. 2d 1340, 1348 (2003), *aff'd*, No. 04-1085 (Fed. Cir. June 10, 2005). The question before the court, therefore, is whether the e-mail message of February 2, 2000 unambiguously conveyed that suspension of liquidation of the four subject entries had been removed.

The pertinent statement contained in the February 2, 2000 e-mail message from Commerce to Customs reads as follows: "Records at the Department of Commerce indicate that there should be no unliquidated entries of potassium permanganate from Spain . . . held by Customs for antidumping purposes during the period 01/19/1984 through 12/31/1999." *Def.'s Opp'n* Attach. 1 at 4b. This statement cannot be read in any manner consistent with the possibility that suspension of liquidation of the subject entries had *not* been removed. A "reasonable Customs official, with knowledge in these matters" could not interpret that statement to mean that liquidation continued to be suspended. *See NEC Solutions*, 27 CIT at ___, 277 F.

Supp. 2d at 1348. Defendant's argument, citing *Juice Farms*, 68 F.3d at 1344, that the statement could have been interpreted to mean that Customs could have liquidated the entries by mistake during the suspension, is unconvincing. The e-mail message includes the words "*should* be no unliquidated entries," words that are inconsistent with a continuing suspension of liquidation. Any reliance by defendant on *Juice Farms* is misplaced; in holding that an importer seeking to challenge a liquidation by Customs effected contrary to a suspension ordered by Commerce pursuant to statute must do so by a timely protest, *Juice Farms* lends no support to defendant's argument.

In *NEC Solutions*, the Court of Appeals held that an e-mail message similar to the February 2, 2000 e-mail, which was authored by Commerce and sent to Customs, provided Customs with unambiguous notice of the removal of suspension of liquidation as contemplated by § 1504(d). The e-mail message in that case read as follows: "Records at the Department of Commerce indicate *that there should be no unliquidated entries of television receivers monochrome and color, from Japan . . .* held by Customs for antidumping purposes during the period 03/10/1971 through 02/28/1999 . . . ." *NEC Solutions*, No. 04-1085, slip op. at 3 (emphasis in original). In its analysis, the Court of Appeals discussed additional language of the e-mail message providing for an "exception" for certain entries of televisions produced by another manufacturer that continued to be enjoined from liquidation by court order. *See id.*, No. 04-1085, slip op. at 3, 8-9. The Court of Appeals agreed with the reasoning of the lower court that "[t]o anyone reasonably familiar with customs law, the juxtaposition of the mandate 'there should be no unliquidated entries' with the exception for certain goods for which a Commerce liquidation order 'continues to be enjoined' could only mean that there are no remaining

suspensions, court-ordered or otherwise, on subject entries, except for those identified." *NEC Solutions*, 27 CIT at \_\_\_, 277 F. Supp. 2d at 1348, *aff'd*, No. 04-1085, slip op. at 7-8. In its opposition to plaintiff's motion for summary judgment filed before the issuance of the opinion of the Court of Appeals in *NEC Solutions*, defendant contends that the holding of the trial court in *NEC Solutions* is distinguishable from the case at bar because the February 2, 2000 e-mail message did not provide for such an exception. The court, however, disagrees.

The Court of Appeals found that "as a whole," the e-mail message at issue in *NEC Solutions* conveyed the type of notice to Customs contemplated in § 1504(d), "that there was nothing preventing the entries of [the plaintiff] from being liquidated. . . ." *NEC Solutions*, No. 04-1085, slip op. at 8. The Court of Appeals specified that "[t]he first line [of the e-mail] *makes this clear* and is reinforced by the second provision that explicitly makes an exception only for certain entries. . . ." *Id.* (Emphasis added). The first paragraph of the February 2, 2000 e-mail message is virtually identical in form to the first "line" of the e-mail message addressed by the Court of Appeals in *NEC Solutions*. The notification that suspension was no longer in effect was equally "clear" in this case. The court finds, therefore, that the notification that "there should be no unliquidated entries" of the subject merchandise, contained in the February 2, 2000 e-mail message, unambiguously communicated to Customs that the suspension of liquidation had been removed.

#### 2. The February 2, 2000 E-Mail Message Commerce Sent to Customs Was Made Public on February 3, 2000

Although neither statute nor case law requires it, the courts have stated that notice from Commerce to Customs regarding the lifting of suspension of liquidation should be made public.

The Court in *NEC Solutions*, for example, found that where messages are posted to the Customs

Electronic Bulletin Board, they are in a location which expressly "allows disclosure to the public

[and,] therefore, there is no question that Commerce was aware that both Customs and the public

(*i.e.*, the parties) would have access to" the notices posted on the Customs Electronic Bulletin

Board. *NEC Solutions*, 27 CIT at ___, 277 F. Supp. 2d at 1348, *aff'd on other grounds*, No.

04-1085 (Fed. Cir. June 10, 2005) (citation and internal quotation marks omitted). The concept

of public notice in the context of § 1504(d) was also endorsed by the Court of Appeals in both

*Fujitsu General America*, 283 F.3d at 1381-82, and *International Trading Co.*, 281 F.3d at 1268.

*See Cemex, S.A. v. United States*, 27 CIT ___, ___, 279 F. Supp. 2d. 1357, 1361 (2003) (stating

that "both *Fujitsu* [*General America*] and *International Trading* [*Co.*] endorse the concept that

the notice should be both unambiguous and public"). Because the February 2, 2000 e-mail

message at issue in this case was posted on the Customs Electronic Bulletin Board on February 3,

2000, any publication requirement that applied to the notice was met.

The third prong of the test set forth by the Court of Appeals in *Fujitsu General America*

for determining whether a deemed liquidation has occurred by operation of § 1504(d) is met

where Customs fails to liquidate an entry during the six-month period that begins upon the

receipt by Customs of notice of the removal of suspension of liquidation. Customs received

adequate notice of the removal of suspension of liquidation from Commerce on February 2, 2000

but did not liquidate the subject entries until March 23 and April 13, 2001. Because Customs did

not liquidate the subject entries within six months of receiving statutorily-sufficient notice of the

removal of suspension of liquidation, the entries liquidated by operation of law in accordance

with 19 U.S.C. § 1504(d) as amended in 1993 at the antidumping duty rate asserted by plaintiff at the time of entry, which rate was zero.

### IV. CONCLUSION

For the foregoing reasons, the court concludes that suspension of liquidation was removed on July 17, 1993, the day on which an appeal of the judgment of this Court concerning the subject entries became time barred, and that the February 2, 2000 e-mail message from Commerce to Customs provided unambiguous notice to Customs of the removal of suspension of liquidation for purposes of 19 U.S.C. § 1504(d). Because Customs did not liquidate the four entries of potassium permanganate from Spain at issue in this action within six months from the date Customs received notice of the removal of the suspension of liquidation, the entries liquidated by operation of § 1504(d) at the zero rate of antidumping duty asserted by plaintiff at the time of entry. Plaintiff, therefore, is entitled to a refund of all of the antidumping duties and interest thereon it previously deposited on the four subject entries, together with interest as provided for by law. Judgment will be entered accordingly.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: July 7, 2005
New York, New York