**Slip Op. 06 – 148**

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| U.S. TSUBAKI, INC., | |
| Plaintiff, | Before: Richard W. Goldberg, Senior Judge |
| v. | Court No.  01-00519 |
| UNITED STATES, | |
| Defendant. | |

## OPINION

[Plaintiff's motion for summary judgment denied in part. Defendant's cross-motion for summary judgment is granted.]

Dated: October 10, 2006

Barnes, Richardson, & Colburn (Brian Francis Walsh, Christine Henry Martinez, Kazumune V. Kano) for Plaintiff U.S. Tsubaki, Inc.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (James A. Curley), for Defendant United States.

**GOLDBERG, Senior Judge:**  This case involves an action to review a denial of protest under 19 U.S.C. § 1515 (2000).  Plaintiff U.S. Tsubaki, Inc. ("**Tsubaki**") moves the court, pursuant to USCIT Rule 56, to enter summary judgment in its favor, and to order the defendant U.S. Customs and Border Protection ("**Customs**") to reliquidate the entries at issue and refund, with interest, the excess duties paid by Tsubaki.  Customs also moves for summary judgment, contending that while five of Tsubaki's

entries are deemed liquidated by operation of law, the majority

of them are not.  See Def.'s Br. Part. Opp'n Pl.'s Mot. Summ. J.

3 ("**Def.'s Br.**").[1]

Five of the entries[2] are deemed liquidated because Customs

waited longer than is permitted under 19 U.S.C. § 1504 (d)

(Supp. V 1984) to liquidate at the rate determined by the U.S.

Department of Commerce's (**"Commerce"**) administrative review.

Tsubaki is therefore entitled to a refund of antidumping duties

paid on them.  However, the Court agrees with Customs that with

the exception of these five entries, the entries at issue are not

deemed liquidated.

## I.    BACKGROUND

### A. Procedural History

Tsubaki imports roller chain from Japan into the United

States.  Pl.'s Mot. Mem. Supp. Summ. J. 3 (**"Pl.'s Br."**).  From

1979 to 1983, Tsubaki made fifty-six entries of roller chain

through various ports, which were subject to an antidumping duty

order.  During this time, Commerce held two periods of

---

[1] With respect to the five entries subject to deemed liquidation, Customs concedes that Tsubaki is entitled to a refund of any excess duty paid and interest assess upon liquidation, with interest on the refund as provided by law.  See Def.'s Br. 3.

[2] These entries are No. 83-952658-0, which corresponds to protest no. 3001-01-100030, and Nos. 83-676679-6, 83-677277-7, 83-677819-5, and 83-677859-3, which correspond to protest no. 2720-01-100107.  See Def.'s  Resp. Pl.'s Stmt. Mat. Facts ¶ 9; Def.'s Br. 17-18.

administrative review: (1) December 1, 1979 through March 31, 1981 ("**the first period**"); and (2) April 1, 1981 through September 1, 1983 ("**the second period**"). Liquidation of the entries was suspended pending the final results from the administrative reviews. The results from the first period were published in the Federal Register on December 4, 1986. See Roller Chain, Other Than Bicycle From Japan, 51 Fed. Reg. 43,755 (Dep't of Commerce Dec. 4, 1986) (final admin. review). The weighted average final dumping margin for the roller chain at issue during the first period was 0.07%. There was no cash deposit required for entries from this period of review.

The results from the second period of review were published in the Federal Register on May 8, 1987. See Roller Chain, Other Than Bicycle, From Japan, 52 Fed. Reg. 17,425 (Dep't of Commerce May 8, 1987) (final admin. review). There was no cash deposit required for the merchandise at the time of entry,[3] but Commerce subsequently determined that the weighted average dumping margin over the period of review ranged from 0.18% to 0.36%. 52 Fed. Reg. at 17,427.

Commerce issued liquidation instructions to Customs on September 18, 2000 for both the first and second periods of

---

[3] There was no cash deposit required for entries filed from April 1, 1981 through September 4, 1981. The cash deposit rate for entries filed from September 5, 1981 through September 1, 1983 was 0%. Pl.'s Br. 4.

review.  Customs then liquidated these entries between October

2000 and February 2001.  Thereafter, Tsubaki filed protests

under 19 U.S.C. § 1514 claiming that the entries at issue were

deemed liquidated by operation of law under 19 U.S.C. § 1504(d).

Tsubaki argued that Customs should have liquidated the entries

at 0%, as that was the cash deposit rate in effect at the time

of entry.  The protest was denied, and Tsubaki subsequently

commenced this action.

### B. Relevant Statutory History

The primary issue before this Court is which version of 19

U.S.C. § 1504(d) applies in this case.  In 1978, Congress

promulgated its first statute governing "deemed liquidation."

Customs Procedural Reform and Simplification Act of 1978, Pub.

L. No. 95-410, § 209, 92 Stat. 888, 902-03, 19 U.S.C. § 1504.

Congress made minor changes to this statute in 1984.[4]  Section

1504 generally provides that if merchandise is not liquidated

within one year from the date of entry, it is "deemed

liquidated" at the rate asserted at the time of entry by the

importer.  See 19 U.S.C. § 1504(a) (Supp. V 1984).  However,

---

[4] Congress made a technical amendment to § 1504 by striking out "his consignee, or agent" and replacing it with "of record" in subsections (a), (b), (c) and (d).  See Trade and Tariff Act of 1984, Pub. L. 98-573, § 191, 98 Stat. 2948, 2970.  This was the last amendment made to 19 U.S.C. § 1504 until the 1993 amendment, which is discussed in further detail below.

special rules apply if liquidation has been suspended. From 1984 until 1993, § 1504(d) provided:

> (d) Limitation - Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record, <u>unless liquidation continues to be suspended</u> as required by statute or court order. When such a suspension of liquidation is removed, <u>the entry shall be liquidated within 90 days therefrom.</u>

<u>Id</u>. § 1504(d) (emphasis added). At first glance it appears that Customs must liquidate an entry within ninety days after suspension of liquidation is removed, but courts have interpreted the ninety-day time limit as directory, not mandatory. <u>See</u> <u>Am. Permac, Inc. v. United States</u>, 191 F.3d 1380, 1382 (Fed. Cir. 1999) ("[E]ntries not liquidated within 90 days after removal of suspension are not deemed liquidated by operation of law . . . .")(<u>citing</u> <u>Canadian Fur Trappers Corp. v. United States</u>, 884 F.2d 563, 566 (Fed. Cir. 1989)). Because this time limit is discretionary,

> [t]he statute had an unfortunate anomaly that made deemed liquidation available for entries for which removal from suspension occurred within the four-year period, but not for entries for which removal from suspension occurred even one day after the four-year time limit. In those circumstances, Customs had an unlimited amount of time in which to liquidate entries.

<u>Koyo Corp. of U.S.A. v. United States</u>, 29 CIT __, __, 403 F. Supp. 2d 1305, 1308 (2005).

Section 1504(d) was amended by the North American Free Trade Agreement Implementation Act in 1993. See Pub. L. No. 103-182, § 641, 107 Stat. 2057, 2204-05. The 1993 version provides as follows:

> (d) Removal of suspension. When a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. <u>Any entry not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record</u>.

19 U.S.C. § 1504(d) (Supp. V 1993) (emphasis added). Unlike the 1984 version, there is no discretionary ninety-day time limit. The 1993 version provides explicitly that merchandise is "deemed liquidated" at the rate asserted at the time of entry if Customs fails to liquidate an entry within six months after receiving notification that the suspension was removed.

In light of the differences between the 1984 and 1993 versions of § 1504(d), Tsubaki claims that its merchandise entered between 1979 and 1983 should be deemed liquidated as a matter of law because Customs failed to liquidate that merchandise within six months after suspension of liquidation had been removed. Customs disagrees, and asserts that application of the 1993 version in this case would have an impermissible retroactive effect. Instead, Customs argues that

the 1984 version's ninety-day discretionary limit should govern.

Furthermore, as the 1984 version's four-year time limit applies

to only five of the fifty-six entries at issue, the majority of

Tsubaki's entries are not deemed liquidated by operation of law.

## II.   <u>JURISDICTION</u>

The Court has exclusive jurisdiction over "any civil action

commenced to contest the denial of a protest, in whole or in

part, under section 515 of the Tariff Act of 1930."  28 U.S.C. §

1581(a) (2000).  This action is timely and jurisdiction is

proper under 28 U.S.C. § 1581(a).

## III.   <u>STANDARD OF REVIEW</u>

This Court reviews protest denials de novo.  <u>See</u> 28 U.S.C.

§ 2640(a)(1) (2000) ("The Court of International Trade shall

make its determinations upon the basis of the record made before

the court in . . . [c]ivil actions contesting the denial of a

protest."); <u>see also</u> <u>Rheem Metalurgica S/A v. United States</u>, 20

CIT 1450, 1456, 951 F. Supp. 241, 246 (1996), <u>aff'd</u> 160 F.3d

1357 (Fed. Cir. 1999).

A motion for summary judgment shall be granted if "the

pleadings [and discovery materials] show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." USCIT R. 56(c).

In ruling on cross-motions for summary judgment, if no genuine

issue of material fact exists, the court must determine whether

judgment as a matter of law is appropriate for either party.

Sea-Land Serv., Inc. v. United States, 23 CIT 679, 684, 69 F.

Supp. 2d 1371, 1375 (1999).  Summary judgment is proper in this

case because there are no genuine issues of material fact.

### IV.  DISCUSSION

#### A. The 1993 Version Would Have an Impermissible Retroactive Effect If Applied to These Facts

#### 1. The Test for Retroactivity

In Landgraf v. USI Film Products, The Supreme Court

identified the proper analysis for determining whether a statute

should apply if it was enacted after the events giving rise to

the lawsuit.  511 U.S. 244, 280 (1994).  A court first must

determine whether Congress expressly "prescribed the statute's

proper reach."  Id.  If Congress has not done so, the court must

decide whether the statute would "operate retroactively."  Id.

A statute's application is not retroactive "merely because it is

applied in a case arising from conduct antedating the statute's

enactment . . . ."  Id. at 269.  However, it is retroactive if

the new statutory provision "attaches new legal consequences" to

those events.[5]  Id. at 269-70.

---

[5] The Landgraf Court provided some further guidance in deciding whether a provision is retroactive:

> The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between

When a statute operates retroactively, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." Id. at 280; see also Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law."). Therefore, unless Congress clearly intended otherwise, a statute that operates retroactively with respect to events that took place before its enactment will not be applied.

It is not merely a "simple or mechanical task" to determine when a statute is retroactive.[6] Landgraf, 511 U.S. at 268. A

_____

the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have "sound instincts," . . . and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

511 U.S. at 270 (citation omitted).

[6] There are three situations where the application of a new statute to past events is "unquestionably proper." See Landgraf, 511 U.S. at 273-75; see also Lindh v. Murphy, 521 U.S. 320, 341-43 (1997) (Rehnquist, C.J., dissenting). These three categories are (1) procedural rules, (2) changes in law that provide prospective forms of relief, and (3) jurisdiction-stripping statutes. None of these categories apply here. First of all, the 1993 amendment to § 1504(d) is clearly not a jurisdiction-stripping statute. Additionally, it does not provide any prospective relief. Instead, the remedy of "deemed liquidation" under § 1504(d) is "quintessentially backward looking." See Landgraf, 511 U.S. at 282. Because the 1993 amendment attaches a new legal burden (i.e., deemed liquidation)

statute operates retroactively if it would (1) impair the rights

a party possessed when he acted, (2) increase a party's

liability for past conduct, or (3) impose new duties with

respect to transactions already completed.  See id. at 280.  In

deciding whether the application of legislation would be

retroactive, a court must look at the "interrelationship between

the new law and past conduct."  Travenol Labs., Inc. v. United

---

to conduct that has already occurred, the statute is
retroactive.  See id.
    Finally, the 1993 version of § 1504(d) does not fall within
the category of new procedural rules that can be applied to past
conduct and pending cases.  It is true that because rules of
procedure "regulate secondary rather than primary conduct," they
generally do not operate retroactively.  Id. at 275.  A
procedural rule is not retroactive if it does not "impose an
additional or unforeseeable obligation" upon a party.  Id. at
278 (quoting Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 721
(1974)).  However, in this case, § 1504(d) governs how long
Customs can wait before it must liquidate entries before they
are "deemed liquidated" by operation of law.  Customs' failure
to liquidate Tsubaki's entries within six months after
suspension of liquidation was removed is the conduct that is
squarely at issue in this lawsuit.  Furthermore, if the 1993
version of § 1504(d) applied in this case, it would impose an
unforeseeable obligation on Customs.  Under the 1984 version of
the law, Customs suffered no consequences if it failed to
liquidate entries that were at least four years old after the
suspension of liquidation was removed.  See supra Part I.B.  By
contrast, under the 1993 statute, any entries, regardless of
age, would be deemed liquidated if Customs failed to liquidate
them within six months of receiving liquidation instructions
after removal of suspension.  Customs properly liquidated all
but five of the entries according to the 1984 version of the
statute.  Because the 1993 version would impose an unforeseeable
legal obligation on Customs, it would operate retroactively in
this case.  Cf. Landgraf, 511 U.S. at 275 n.29 ("A new rule
concerning the filing of complaints would not govern an action
in which the complaint had already been properly filed under the
old regime . . . .").

States, 118 F.3d 749, 752 (Fed. Cir. 1997).  If the conduct that

"triggers" a particular statute's application occurs before the

law's effective date, the statute's application to that conduct

would be retroactive.  See id. (citation omitted).  To select

the appropriate triggering event, the Court will examine at

which point in the importation process the 1993 version 19

U.S.C. § 1504(d) becomes relevant.

**2. Application of the Test for Retroactivity**

In a case that is exactly on point, the U.S. Court of

Appeals for the Federal Circuit (**"Federal Circuit"**) stated that

"[t]he 'triggering event' for the running of the 6-month time

period under [the 1993 version of 19 U.S.C. §1504(d)] is the

lifting of the suspension on liquidation . . . ."  Am. Permac,

191 F.3d at 1381.  Prior to 1993, Customs faced very different

legal consequences if it failed to liquidate within six months

after suspension of liquidation was removed.  See id.  Under the

older statute, Customs was under no statutory mandate to

liquidate entries within a particular time period.  Instead,

Congress merely suggested that Customs liquidate the relevant

entries within ninety days.  Even if ninety days passed after

removal of the suspension, the entries would not be deemed

liquidated.[7]  In contrast, after the 1993 amendment, Customs is

---

[7] As discussed above, if liquidation was suspended, "deemed
liquidation" would only occur if (1) the entries were less than

required to liquidate entries within six months after suspension has been removed.  If Customs fails to do so, the entries will be deemed liquidated.  This mandated deemed liquidation is a new legal consequence of removal of suspension that was not present under the 1984 version.

The suspension on liquidation of the two sets of Tsubaki's entries was lifted in December 1986 and May 1987, when Commerce published the results of its administrative reviews.  See Int'l Trading Co. v. United States, 24 CIT 596, 606, 110 F. Supp. 2d 977, 986 (2000), aff'd 281 F.3d 1268, 1275 (Fed. Cir. 2002) (suspension removed when final results published by Commerce).  As the suspension was removed well before the 1993 amendment to § 1504(d), the 1993 version would have a retroactive effect in this case.  As there is no evidence that Congress contemplated that the statute apply retroactively, the presumption against retroactivity requires that the 1993 amendment does not apply to these facts.  See Am. Permac, 191 F.3d at 1381-82 (citing Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 237 (1995)).

Citing American International, Tsubaki argues that the statement by the American Permac court identifying the relevant "triggering event" as the removal of suspension is a dictum.

_____

four years old, (2) suspension of liquidation was removed, and (3) Customs failed to liquidate within that same four-year period.  19 U.S.C. § 1504(d) (Supp. V 1984); see Koyo, 29 CIT at __, 403 F. Supp. 2d at 1308.

The <u>American International</u> court described <u>American Permac</u>'s narrow holding as follows: "It [is] impermissible to apply § 1504(d) as amended in 1993 when the removal of suspension, the running of the six-month period, and the date of liquidation by operation of law all occurred prior to the effective date of the 1993 amendment." See <u>Am. Int'l Chem., Inc. v. United States</u>, 29 CIT __, 387 F. Supp. 2d 1258, 1265 (2005). Unlike in <u>American Permac</u>, there was no retroactive effect in <u>American International</u> because all the relevant events occurred after the 1993 amendment. Significantly, in the present case, the removal of suspension, the running of the six-month period, and the date of liquidation by operation of law all occurred prior to December 8, 1993. Therefore, even under the narrower <u>American Permac</u> holding restated in <u>American International</u>, the 1993 version would operate retroactively if applied to Tsubaki's entries.[8]

---

[8] Tsubaki argues that this case "parallels" that of <u>Fujitsu General</u>, in which the court applied the 1993 version of § 1504(d). Pl.'s Br. 14 (<u>citing</u> <u>Fujitsu Gen. Am., Inc. v. United States</u>, 24 CIT 733, 110 F. Supp. 2d 1061 (2000), <u>aff'd</u> 283 F.3d 1364 (Fed. Cir. 2002)). That case involved entries which took place between 1986 and 1988. The importer challenged the final results of an administrative review, which was completed in 1991. The Federal Circuit ruled that suspension of liquidation was not removed until 1996, when the time to petition the Supreme Court expired. In contrast, the suspension of liquidation of Tsubaki's entries was removed when the final results of the administrative review were published, in 1986 and 1987, well before 1993. Tsubaki did not challenge the results of the final administrative review, and therefore no injunction

With the support of Travenol, Tsubaki asserts that the triggering event should be Customs' liquidation of the entries. However, Tsubaki's reliance on Travenol is misplaced. To begin with, the provision at issue in Travenol was 19 U.S.C. § 1505(c), which is not the statute at issue in the present case. Section 1505(c) relates to the interest that is owed for either an underpayment or overpayment of estimated duties. See Travenol, 118 F.3d at 753. The Travenol court held that the triggering event for § 1505(c) is the liquidation or reliquidation of an entry because § 1505(c) "comes into play only after there has been a determination that interest is due . . . ." Id. Because Customs cannot assess interest until after an entry is liquidated, liquidation must occur before Customs can decide how much an importer owes. Under such circumstances, it is clear that liquidation sets in motion, or triggers, the process by which the rate of interest is determined.

In this case, the issue is not the rate of interest but at what rate goods can be liquidated after suspension has been removed. Under the 1993 version of § 1504(d), that rate is determined by reference to the date Customs received notice that suspension was removed. Therefore, it is impossible for liquidation, namely the event which concludes the process, to be

_____

to continue suspension of liquidation was requested or issued after publication of the final results of the administrative reviews.

the triggering event.  Under the circumstances of this case, the event that began the running of the six-month period was the date Commerce published the final results of the administrative review, thereby lifting the suspension of liquidation and providing Customs with notice of the same.  See Int'l Trading Co. v. United States, 281 F.3d 1268, 1275 (Fed. Cir. 2002) (**"Int'l Trading II"**) (notice requirement of § 1504(d) as amended in 1993 is met when Commerce publishes the final results of the administrative review in the Federal Register).

The Court therefore holds that the application of the 1993 version of § 1504(d) would have an impermissible retroactive effect if applied to a case where the following events have occurred before the enactment of the 1993 amendment: (1) Commerce published the final results of its administrative review (thereby simultaneously lifting the suspension of liquidation and giving notice to Customs) and (2) the six-month time limit imposed by the 1993 amendment has run.  Therefore, the 1984 version of 19 U.S.C. § 1504(d) must apply to these facts.

**B. Pursuant to the 1984 Version of 19 U.S.C. § 1504(d), the Entries at Issue Are Not Entitled to Deemed Liquidation**

Prior to 1993, the first sentence of § 1504(d) provided that if an entry is not liquidated within four years from the date of entry, it will be "deemed liquidated" unless the

liquidation is suspended.  See 19 U.S.C. § 1504(d) (Supp. V 1984).  In this case, all but five of Tsubaki's entries were under suspension for longer than four years.  Because the suspension of liquidation orders were not removed until after the four-year time limit expired, the language in the first sentence of § 1504(d) simply does not apply in this case.  See Canadian Fur Trappers, 884 F.2d at 565-66; Dal-Tile Corp. v. United States, 17 CIT 764, 769, 829 F. Supp. 394, 398 (1993), aff'd, 26 F.3d 139 (Fed. Cir. 1994) (merchandise under suspension more than four years after date of entry falls under exception to the four-year time limit).

The second sentence of § 1504(d) contains a specific exception to the four-year time limit for liquidation suspended either by statute or by court order.  It provides that such entries "shall be liquidated within 90 days [after the suspension of liquidation is removed]."  19 U.S.C. § 1504(d) (Supp V 1984).  As discussed above, this language was directory, rather than mandatory.  Even if Commerce removes the suspension of liquidation, and ninety days pass, the entries are not deemed liquidated as a matter of law.  See Canadian Fur Trappers, 884 F.2d at 566.

Tsubaki's merchandise entered more than four years before the suspension of liquidation was removed in 1986 and 1987. Therefore, Tsubaki's entries are not liquidated as a matter of

law because they fall under the 1984 version of § 1504(d), which does not mandate deemed liquidation on these facts.  In line with <u>Canadian Fur Trappers</u> and <u>American Permac</u>, the Court finds that none of Tsubaki's contested entries are entitled to deemed liquidation under 19 U.S.C. § 1504(d) (Supp. V 1984).

### C. Five of Tsubaki's Entries Are "Deemed Liquidated" under the 1984 version of § 1504(d)

Entry Nos. 83-952658-0, 83-676679-6, 83-677277-7, 83-677819-5, and 83-677859-3 were made between May 23 and July 25, 1983.  The removal of suspension of liquidation of these entries occurred on May 8, 1986, when Commerce published the final results of its administrative review.  Because four years did not pass between the date of entry and the date suspension of liquidation was removed, the language in the first sentence of § 1504(d) (Supp V 1984) applies.  As Customs properly concedes, these entries are therefore deemed liquidated by operation of law.  See <u>Nunn Bush Shoe Co. v. United States</u>, 16 CIT 45, 46-48, 784 F. Supp. 892, 893-94 (1992).

### D. The Existence of an E-mail Sent by Commerce to Customs on June 9, 2000 Is Not Relevant

Finally, Tsubaki makes the alternative argument that because Customs allegedly received e-mail notice from Commerce regarding the lifting of suspension after the effective date of

§ 1504(d) (Supp. V 1993), the 1993 amendment applies.[9] Tsubaki alleges that that Commerce e-mailed liquidation instructions to Customs on February 2, 2000, well after the effective date of the 1993 amendment. Pl.'s Br. Opp. Def.'s Cross Mot. Summ. J. 11 (**"Pl.'s Br. Opp."**). Tsubaki reasons that because Customs did not receive e-mail instructions in this case until 2000, adequate notice did not occur until that time. Id. (citing Am. Int'l Chem., 29 CIT at __, 387 F. Supp. 2d at 1269-70 (ruling that liquidation instructions e-mailed from Commerce to Customs constituted adequate notice that the suspension of liquidation had been lifted)).

The problem with Tsubaki's argument, however, is that in American International, Commerce e-mailed liquidation instructions to Customs before it published the final results of the administrative review in the Federal Register. Id. at 1261. The issue in that case was whether, absent such publication, e-mail instructions constituted adequate notice. That court ruled that it did. Id. at 1269-70. In the case at hand, however, the results of the administrative review were published long before

---

[9] The existence of this e-mail is disputed by the parties. See Def.'s Reply 7 ("The plaintiff offers no proof of the contents of the e-mail, or that Commerce sent the e-mail, or that Customs received the e-mail."), but as it is irrelevant to this lawsuit, it is not a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

Commerce allegedly sent Customs liquidation instructions via e-mail.  See Pl.'s Br. Opp. 2 (stating that the final results of the administrative reviews were published in 1986 and 1987, and the e-mail was sent to Customs in 2000).  Notice is effected upon publication in the Federal Register.  See Fujitsu Gen. Am., Inc., 283 F.3d at 1381-82; Int'l Trading II, 281 F.3d at 1275-76; Am. Int'l Chem., 29 CIT at __, 387 F. Supp. 2d at 1267.  The mere fact that Customs did not receive an e-mail until 2000 does not render meaningless the publication of final results in 1986 and 1987.  See Am. Int'l Chem., 29 CIT at __, 387 F. Supp. 2d at 1267 (publication is the "hallmark of proper notice under § 1504(d)").  It is therefore irrelevant that Commerce may have sent e-mail liquidation instructions in 2000.

## V. CONCLUSIONS

For the foregoing reasons, the Court denies in part Tsubaki's motion for summary judgment and grants Customs' motion for summary judgment.  Pursuant to the 1984 version of 19 U.S.C. § 1504(d), fifty-one of the entries at issue in this case are not deemed liquidated by operation of law because the four-year time limit did not apply.  Five of the entries are deemed liquidated because less than four years had passed between the date of entry and the date the suspension of liquidation was removed.  These five entries should be reliquidated by Customs as entered, and any excess antidumping duties and interest

assessed upon liquidation should be refunded to Tsubaki with interest on the refund as provided by law.  Judgment shall be entered accordingly.

/s/ Richard W. Goldberg
**Richard W. Goldberg**
**Senior Judge**

**Date:     October 10, 2006**
**           New York, New York**