UNITED STATES of America, Plaintiff,

and

Hannibal, Inc., Plaintiff–Intervenor,

v.

JICK (USA) INDUSTRIAL CORPORA-
TION, Jyic Industrial Inc., and Intercar-
go Insurance Company f/k/a Interna-
tional Cargo and Surety Insurance
Company, Defendants.

Slip Op. 98–146.
Court No. 97–05–00743.

United States Court of
International Trade

Oct. 14, 1998.

Frank W. Hunger, Asst. Atty. Gen. of
U.S., Joseph I. Liebman, Attorney in Charge,
Intern. Trade Field Office, Litigation
Branch, Civil Div., U.S. Dept. of Justice,
(Barbara S. Williams, of counsel), Jeffrey
Sadjak, Office of Asst. Chief Counsel, Intern.
Trade Litigation, U.S. Customs Service, for
Plaintiff.

Schagrin Associates (Roger Schagrin),
Washington, DC, for Plaintiff–Intervenor.

Sharma & Bhandari (Onkar N. Sharma),
Ashton, MD, for Defendant JYIC Industrial,
Inc.

Glad & Ferguson (T. Randolph Ferguson),
San Francisco, CA, for Defendant Intercargo
Ins. Co.

## OPINION

POGUE, Judge.

This matter is before the Court on Defen-
dant's Motion for Summary Judgment. *See*
U.S.C.I.T. R. 56. In the underlying action,
the government seeks to recover antidump-
ing duties and interest on six entries of steel
tubing imported from Taiwan by Defendant
JICK (USA) Industrial Corporation
("JICK"). The Court has jurisdiction pursu-
ant to 28 U.S.C. § 1582(2) & (3)(1994).

### Background

On March 27, 1989, the Department of
Commerce ("Commerce") issued an anti-
dumping duty order applying to certain car-
bon steel tubing from Taiwan. *Light–Walled
Welded Rectangular Carbon Steel Tubing
From Taiwan,* 54 Fed.Reg. 12,467 (Dep't
Commerce 1989)(antidumping duty ord.)("Or-
der"). JICK imported merchandise during
the 1990–91 period covered by the second

annual administrative review of the Order. The preliminary results of that administrative review suspended liquidation of the covered merchandise. *Light–Walled Rectangular Carbon Steel Tubing From Taiwan,* 57 Fed.Reg. 4,862, 4,863 (Dep't Commerce 1992)(prel. results admin. rev.).

The final results of the second administrative review were published on June 9, 1992. *Light–Walled Rectangular Carbon Steel Tubing From Taiwan,* 57 Fed.Reg. 24,464 (Dep't Commerce 1992)(final results admin. rev.)("*Final Results*"). JICK's 1990–91 entries, however, were not liquidated until 1995.

## Standard of Review

Rule 56 of this court permits summary judgment when "there is no genuine issue as to any material fact...." U.S.C.I.T. R. 56(d); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, (1986); *Glaverbel Société Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1560 (Fed.Cir.1995); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390–91 (Fed.Cir.1987).

In considering whether material facts are in dispute, the evidence must be considered in a light most favorable to the non-moving party, drawing all reasonable inferences in its favor, as well as all doubts over factual issues. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Anderson,* 477 U.S. at 252; *Mingus,* 812 F.2d at 1390–91. Nevertheless, "when a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." U.S.C.I.T. R. 56(f). Once it is clear there are no material facts in dispute, a case is proper for summary adjudication.

## Discussion

Defendant claims that Commerce's delay in liquidation violates the four-year limitation on liquidation imposed by section 1504 of the antidumping duty statute. Def.'s Mem. Sup. Mot. Summary J. ("Def.'s Brief") at 4. Defendant alleges the "suspension [of liquidation of the merchandise] was lifted on June 9, 1992, the date of publication of the final results of the second administrative review...." *Id.* at 6.

The *Final Results,* however, state: "[t]he Department shall determine, and the Customs Service shall assess, antidumping duties on all appropriate entries. Individual differences between United States price and foreign market value may vary from the percentage stated above. The Department will issue appraisement instructions directly to the Customs Service." 57 Fed.Reg. at 24,464. The *Final Results* did not explicitly lift the suspension of liquidation.

The government claims that the suspension was lifted by unpublished e-mail instructions from Commerce to Customs on January 13, 1995. Pl.'s Mem. Opp'n Mot. Summary J., Ex. A. That document, among other things, states: "[t]hese instructions constitute the immediate lifting of suspension of liquidation of entries for the merchandise and period listed...." *Id.* at Par. 2.

Thus, it is clear that the *Final Results* do not contain liquidation instructions from Commerce to Customs. Rather, those instructions were issued two and a half years later. Defendant's motion seeks to test the legality of that delay.

■ Liquidation is "the final computation or ascertainment of the duties or drawback accruing on an entry" of merchandise. 19 C.F.R. § 159.1 (1998). By statute, any entry not liquidated within four years of the date of entry or withdrawal from warehouse is "deemed liquidated" at the amount initially asserted by the importer "unless liquidation continues to be suspended as required by statute or court order." *See* Section 504(d) of the Tariff Act of 1930, *as amended,* 19 U.S.C. § 1504(d)(1988).

■ Section 1675(a) provides for the retrospective assessment of antidumping duties after an annual administrative review of antidumping duty orders. 19 U.S.C. § 1675(a)(1988). To establish harmonious interpretations of section 1675(a) and section 1504(d), this Court has held that because of 1675(a), the suspension of liquidation during

the annual review is required by statute. *American Permac, Inc. v. United States,* 10 CIT 535, 538–39, 642 F.Supp. 1187, 1190–91 (1986); *see also Ambassador Div. of Florsheim Shoe v. United States,* 748 F.2d 1560, 1565, 3 Fed. Cir.(T) 28, 34 (1984).[1] Consequently, the annual review operates to meet the requirements for suspension established by section 1504(d). *See American Permac, Inc. v. United States,* 16 CIT 672, 678, 800 F.Supp. 952, 958 (1992), *aff'd,* 996 F.2d 1236, 1993 WL 150624 (Fed.Cir.1993).

Here, the *Final Results* were issued on June 9, 1992, but the liquidation instructions were not issued until January 13, 1995. The government, however, offers no explanation for what appears to be an extraordinary delay in issuing the liquidation instructions. Nevertheless, section 1675 imposes no penalty for such a delay. Commerce completes its administrative review by issuing its liquidation instructions to Customs and by lifting the suspension of liquidation. "When such a suspension of liquidation is removed, the entry shall be liquidated within 90 days therefrom." 19 U.S.C. § 1504(d).

Defendant offers no authority for the proposition that the administrative review is terminated before the liquidation instructions are issued. Rather, Defendant argues that "[t]he Government had all the information it needed to liquidate the subject entries on June 9, 1992." Def.'s Brief at 4. In addition, the Court cannot accord a presumption of good faith to the Government's unexplained two and a half year delay.[2] Nonetheless, on the Defendant's Motion for Summary Judgment, the Court must draw all inferences in favor of the non-moving party. It appears that Customs could not commence liquidation until the suspension of liquidation was lifted. Accordingly, on this record, the Court cannot test the government's fidelity to section 1504.

Therefore, the Defendant's motion must be and is hereby denied.

---

1. Some of the cases cited here were resolved under the version of the statute that provided for mandatory annual administrative reviews. *See* 19 U.S.C. § 1675(a)(1982). The Court recognizes that reviews must now be requested. *See* 19 U.S.C. § 1675(a)(1988). Nevertheless, this difference does not change the outcome of the present case.

2. The courts have ordinarily recognized that in all administrative actions there is a presumption of good faith on the part of the government. *United States v. Roses, Inc.,* 706 F.2d 1563, 1566 (Fed.Cir.1983). Here, however the presumption of good faith cannot shield the agency's unexplained action from review. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1970).