**INTERNATIONAL TRADING COMPANY, Plaintiff–Appellee,**

v.

**UNITED STATES, Defendant–Appellant.**

**No. 00–1577.**

United States Court of Appeals, Federal Circuit.

March 1, 2002.

Rehearing Denied April 24, 2002.

R. Brian Burke, Rode & Qualey, of New York, NY, argued for plaintiff-appellee. With him on the brief was William J. Maloney.

James A. Curley, Attorney, Civil Division, Commercial Litigation Branch, Department of Justice, of New York, NY, argued for defendant-appellant. With him on the brief were Stuart E. Schiffer, Deputy Assistant Attorney General; David M. Cohen, Director, Department of Justice, of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief were Edward N. Maurer, Attorney, Office of Assistant Chief Counsel, United States Customs Service, of New York, NY; and Cindy G. Buys, Attorney, Office of Chief Counsel for Import Administration, Department of Commerce, of Washington, DC.

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

The government appeals from a decision of the United States Court of International Trade holding that the Customs Service did not liquidate particular entries within the statutorily allotted time, and that those entries therefore were deemed liquidated at the rate deposited by the importer. The government challenges the court's decision as to when the period for Customs to liquidate the entries began to run. We reject the government's arguments and affirm the trial court's judgment.

I

Between March 1993 and February 1994, the International Trading Company ("ITC") imported shop towels from a company in Bangladesh, Sonar Cotton Mills (Bangladesh) Ltd. At the time of entry into the United States, the towels were subject to an antidumping order that required a cash deposit of antidumping duties at the rate of 2.72%. In April 1994, the Department of Commerce published a notice in the Federal Register that it would conduct an administrative review of the antidumping duty order on shop towels from Bangladesh covering the period of March 1, 1993, to February 28, 1994. Liquidation of the entries falling within the scope of the review was suspended pursuant to 19 U.S.C. § 1673b(d).

On February 12, 1996, Commerce published the final results of the administrative review in the Federal Register. The final results announced an antidumping duty rate of 42.31% for Sonar's towels. The next day, Commerce sent an e-mail message to Customs. Referring to the Federal Register entry of the previous day, the message noted that the administrative review had been completed, but it advised Customs not to liquidate any entries covered by the review until it received liquidation instructions.

More than six months later, on August 29, 1996, Commerce sent another e-mail message to Customs. That message, which was designated "non-public," directed Customs to assess antidumping duties at the rate of 42.31% on imports of Sonar's towels and stated "these instructions constitute the immediate lifting of suspension of liquidation of entry summaries for the merchandise and period listed above."

Customs liquidated the entries in October of 1996 and assessed antidumping

duties at the rate of 42.31% of the entered value. ITC filed a formal protest, arguing that the entries were deemed liquidated by operation of law under 19 U.S.C. § 1504(d) at the rate ITC asserted at the time of entry, *i.e.*, at the deposit rate of 2.72%, because Customs did not liquidate the entries within six months after receiving notice of the removal of suspension of liquidation. The protest was denied, and ITC's request for further administrative review was denied in a letter ruling by Customs.

ITC then filed this action in the Court of International Trade, contending that the entries should be deemed liquidated at the deposit rate. The court held that the statutory suspension of liquidation had been removed upon the publication of the final results of the administrative review in the Federal Register and that the e-mail message sent to Customs the following day provided notice to Customs that suspension had been lifted. Accordingly, the court concluded that Customs had failed to liquidate the entries within six months after receiving notice of the removal of suspension, as required by 19 U.S.C. § 1504(d). Because Customs had failed to liquidate the entries within the allotted period, the court held that the entries were deemed liquidated at the deposit rate. The government then took this appeal.

## II

The statute that is the focus of this case, 19 U.S.C. § 1504(d) (Supp. V 1993), provides that when a suspension of liquidation required by statute or court order is removed,

> the Customs Service shall liquidate the entry ... within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or

a court with jurisdiction over the entry. Any entry ... not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

That statute has subsequently been amended, but not in ways material to the issue in this case.[1] Because section 1504 provides that an entry will be deemed liquidated by operation of law if Customs does not liquidate the entry within six months of receiving notice from Commerce that the suspension has been removed, it is critical to determine what constitutes the act that effects the removal of suspension and what constitutes notice of the removal to Customs. Unfortunately, neither section 1504 nor any other statute or regulation defines those statutory terms. Like the trial court, we therefore look to the structure and purposes of the Tariff Act to give those terms meaning.

### A

The trial court agreed with ITC that suspension of liquidation for the entries at issue in this case was removed when the final results of the administrative review were published in the Federal Register. The government disagrees and argues that the suspension of liquidation was not removed until after (1) the final results were published and (2) Commerce instructed Customs to liquidate the entries. We reject the government's argument and agree with the trial court that suspension was removed upon publication of the final results in the Federal Register.

---

1. Other portions of the antidumping law have also been amended. In this opinion, we refer to the pre–1994 versions of each of the pertinent sections of the Tariff Act, which govern this case.

The statutory scheme governing suspension of liquidation supports the trial court's conclusion that suspension of liquidation was removed when the final results of the administrative review were published in the Federal Register. Liquidation of a particular class of entries is suspended when Commerce publishes in the Federal Register an affirmative preliminary or final determination in an antidumping investigation covering those entries. *See* 19 U.S.C. §§ 1673b(d) (1988); 1673d(c)(1)(C) (1994). Liquidation is suspended in that setting because it is not possible, at that point, to determine what duties will be assessed against those entries. It follows logically that suspension should be removed as soon as it is possible to determine the appropriate duties, which occurs when the antidumping duty order is issued or the final results of an administrative review are announced. The statutes providing for the publication of an antidumping duty order or the final results of an administrative review are consistent with that understanding. In the case of antidumping duty orders, the applicable statute provides that the order should set forth the antidumping duty rate and directs Customs officers to assess antidumping duties promptly against the entries that are subject to the order. 19 U.S.C. § 1673e(a) (1994). In the case of the published final results of an administrative review, the applicable statute provides that the final results should set forth the determination of antidumping duty rates that "shall be the basis for the assessment of antidumping duties" on the subject entries. 19 U.S.C. § 1675(a)(2) (1988). A fair construction of those statutes is that because they impose an obligation on Customs to liquidate the entries promptly after publication of the order in question, the suspension of liquidation is removed as of the time of the publication. Moreover, as the trial court noted, tying the removal of suspension to the issuance of an antidumping duty order or the final results in an administrative review has the virtue of parallelism with the mechanism by which suspension was initiated; thus, suspension is begun by publication of an announcement of the beginning of the antidumping investigation, and suspension is removed by the publication of the announcement of the conclusion of the investigation.

■ The legislative history of section 1504(d) also supports the trial court's conclusion that suspension of liquidation was removed upon publication of the final results in the Federal Register. Before section 1504 was enacted, there was no statutory restriction on the length of time Customs could take to liquidate an entry. *St. Paul Fire & Marine Ins. Co. v. United States,* 6 F.3d 763, 767 (Fed.Cir.1993). "Customs could delay liquidation as long as it pleased, with or without giving notice." *Int'l Cargo & Surety Ins. Co. v. United States,* 779 F.Supp. 174, 177 (Ct. Int'l Trade 1991). In 1978, Congress enacted section 1504 to impose a four-year time limit for liquidation. The primary purpose of section 1504 was to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." *Dal–Tile Corp. v. United States,* 829 F.Supp. 394, 399 (Ct. Int'l Trade 1993) (internal quotations and citation omitted).

In 1993, Congress amended section 1504(d). The amendment was designed in part to address an anomaly in the prior version of the statute, which made deemed liquidation available if suspension of liquidation were removed before the expiration of the maximum four-year period for liquidating entries, but not if suspension of liquidation were removed after the expiration of the four-year period. *See Dal–Tile,* 829 F.Supp. at 399–400. The amendment

increased the period of time within which Customs could liquidate entries after removal of suspension of liquidation from 90 days to six months. In addition, however, the amendment made clear that deemed liquidation was the consequence of Customs' failure to liquidate within that six-month period. *See* H.R.Rep. No. 103–361 part I, at 139 (1993).

The government's position in this case would undermine one of the principal objectives of the 1993 amendments by giving the government the unilateral ability to extend the time for liquidating entries indefinitely. That is because under the government's theory the removal of suspension of liquidation would occur only when Commerce instructed Customs to liquidate the entries, an event that Commerce could postpone for any period of time after issuing the final results.

The government asserts that the publication of the final results of the administrative review in the Federal Register cannot be the act that removed the suspension of liquidation because Commerce had not necessarily finished its administrative review when those results were published. The trial court found no merit in that argument, nor do we. By regulation, Commerce was required, promptly after issuing the final results, to (1) "provide to parties to the proceeding which request disclosure a further explanation of the calculation methodology used in reaching the final results," 19 C.F.R. § 353.22(c)(9) (1993); and (2) "instruct the Customs Service to assess antidumping duties" on the merchandise entered during the period under review, 19 C.F.R. § 353.22(c)(10) (1993). If Commerce had not completed its administrative review at the time the final results were published in the Federal Register, it would not have been able to comply with its own regulations.

The government argues that because Customs acts in a ministerial capacity when liquidating antidumping duties, the suspension of liquidation cannot be removed until Customs has all the information it needs to perform its ministerial task, i.e., when Commerce gives Customs instructions regarding liquidation. While it is true that Customs merely follows Commerce's directions regarding the assessment of antidumping duties, that does not mean that the statutory removal of suspension of liquidation cannot occur until Customs gets liquidation instructions from Commerce. The statute contemplates that Commerce and Customs will cooperate to effectuate liquidation promptly after the publication of the final results of the administrative review. The statute thus quite reasonably imposes requirements of expedition on both Commerce and Customs. Contrary to the suggestion in the government's brief, there is nothing untoward about having the six-month period for liquidation run during the period between the time Commerce publishes the final results and the time Commerce directs Customs to liquidate the entries that are covered by those results.

The government makes the related argument that suspension of liquidation must continue beyond the date that the final results are published in order to allow time for aggrieved parties to request the correction of ministerial errors under 19 U.S.C. § 1675(h) and to seek judicial review under 19 U.S.C. § 1516a. That argument is a non sequitur. Even under the government's proposed construction of section 1504(d), the time for correcting ministerial errors and seeking judicial review could be cut short if Commerce issued liquidation instructions at the time it published the final results and Customs promptly liquidated the subject entries based on those instructions. Thus, there is nothing about the government's pro-

posed construction that would avoid the problem the government sees with the construction adopted by the trial court. By the same token, the trial court's construction does not force Commerce and Customs to act so quickly that importers will be deprived of their rights to seek correction of ministerial errors or judicial review of the final results. All that is required is that Commerce and Customs fulfill their respective obligations so that liquidation occurs within six months.

Finally, we take considerable comfort in the fact that our position is consistent with prior decisions of the Court of International Trade, the court that has expertise in addressing antidumping issues and deals on a daily basis with the practical aspects of trade practice. That court's decisions support the importer's position that suspension of liquidation was removed upon publication of the final results in the Federal Register. In *American Permac, Inc. v. United States*, 642 F.Supp. 1187 (Ct. Int'l Trade 1986), for example, the plaintiff claimed that entries should have been deemed liquidated four years after importation under 19 U.S.C. § 1504(d) (1982), even though liquidation was suspended at the time the four-year period ended. The court rejected that position, stating in the course of its analysis that "the statutorily required suspension of liquidation continued until [Commerce] published the final results of its review." 642 F.Supp. at 1197. The Court of International Trade has employed similar analysis in later

cases. *See Am. Permac, Inc. v. United States*, 800 F.Supp. 952, 958 (Ct. Int'l Trade 1992), *aff'd*, 996 F.2d 1236 (Fed.Cir. May 12, 1993) (unpublished opinion); *Rheem Metalurgica S/A v. United States*, 951 F.Supp. 241, 248 (Ct. Int'l Trade 1996), *aff'd*, 160 F.3d 1357 (Fed.Cir.1998).

■ The only contrary case cited by the government is *United States v. Jick (USA) Industries Corp.*, 27 F.Supp.2d 199 (Ct. Int'l Trade 1998). In *Jick*, the court accepted the government's argument that the suspension of liquidation remained in effect until Commerce issued an unpublished e-mail instruction advising Customs that suspension had been lifted. 27 F.Supp.2d at 201. The *Jick* court, however, observed that the importer had failed to cite any authority to support its argument on summary judgment that the suspension of liquidation was terminated upon publication of the final results in the Federal Register, and the court therefore drew an adverse inference on that issue against the importer. In this case, by contrast, the trial court noted that the importer had presented extensive and persuasive authority that suspension is removed upon publication of the final results, and for that reason declined to follow *Jick*. We agree with the trial court's analysis and hold that suspension of liquidation in this case was removed upon publication of the final results of the administrative review in the Federal Register.[2]

---

2. The government urges us not to follow the lead of the Court of International Trade but to defer to a series of Customs Service rulings, including the ruling in this case, in which Customs has stated its view that the six-month period of section 1504(d) is not triggered until Customs receives liquidation instructions from Commerce. As the Supreme Court recently explained in a closely analogous context, such rulings are not entitled to deference under *Chevron USA Inc. v. Natural Resources*

*Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); instead, they are entitled to weight only to the extent that they are carefully considered, consistent, and persuasive. *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292 (2001). The Customs rulings on which the government relies contain little legal analysis, and although they take a consistent legal position, we do not find that legal position persuasive. We therefore decline the govern-

B

█ Even if suspension has been removed, section 1504(d) provides that the six-month period for deemed liquidation does not begin to run until Customs receives notice from Commerce that the suspension has been removed. The trial court found that publication of the final results in the Federal Register did not constitute notice to Customs that suspension had been removed but that the e-mail message sent to Customs the following day, February 13, 1996, did constitute such notice. On appeal, the government asserts that the February 13 e-mail message did not constitute notice within the meaning of section 1504(d) and that Customs did not receive such notice until it received specific instructions from Commerce to liquidate the entries, an event that according to the government did not occur until the non-public e-mail message of August 29, 1996. ITC, on the other hand, argues that publication by Commerce of the final results in the Federal Register constituted notice to Customs of the removal of suspension. Although the judgment in this case would be the same under either the trial court's construction of the statute or ITC's construction, we agree with ITC that publication of the final results in the Federal Register constitutes notice to Customs within the meaning of section 1504(d).

For some of the same reasons that publication of the final results removes the suspension of liquidation, publication also provides notice of the removal to Customs. Publication in the Federal Register is a familiar manner of providing notice to parties in antidumping proceedings. *See, e.g.,* 19 U.S.C. § 1673d(d) (1994) (requiring the International Trade Commission and Commerce to notify interested parties of their

determinations by publication in the Federal Register); 19 U.S.C. § 1673e(c)(2)(A) (1994) (requiring Commerce to publish notice in the Federal Register if it decides to allow an importer to post a bond in lieu of the deposit of estimated antidumping duties); 19 U.S.C. § 1673e(c)(3) (1988) (requiring Commerce to publish notice in the Federal Register of the results of its determinations and to assess antidumping duties based on those published results); 19 U.S.C. § 1516a(a) (1994) (requiring parties who object to a Commission decision to act within 30 days after the date of publication of that decision in the Federal Register); 19 U.S.C. § 1516a(c)(1) (1994) (tying the date for liquidation of entries affected by a relevant court decision to the date that notice of that court decision is published in the Federal Register). It therefore seems reasonable that Congress intended for publication of the final results in the Federal Register to have some legal effect.

Moreover, the date of publication provides an unambiguous and public starting point for the six-month liquidation period, and it does not give the government the ability to postpone indefinitely the removal of suspension of liquidation (and thus the date by which liquidation must be completed) as would be the case if the six-month liquidation period did not begin to run until Commerce sent a message to Customs advising of the removal of suspension of liquidation. Beyond that, treating the date of notification as separate from the date of publication could lead to messy factual disputes about when Customs actually received notice of the removal of the suspension of liquidation. As in this case, the courts would be required to referee debates about what kind of communication

ment's invitation to defer to the position taken in Customs' rulings in this and other similar

cases.

from Commerce relating to the announcement of the final results constituted a qualifying "notice" of the removal of suspension. The government, for example, contends that "notice" of the removal of suspension requires that Commerce provide Customs with liquidation instructions before Customs can be deemed to have "notice" of the removal of suspension, even though the statute says nothing about liquidation instructions. Adopting that position would require the courts, after the fact, to examine informal and non-public communications between Commerce and Customs to determine whether and when those communications constituted "liquidation instructions."

The language of 19 U.S.C. §§ 1675(a)(1) and 1675(a)(2) also supports the construction that publication of the final results in the Federal Register constitutes notice to Customs of the removal of suspension of liquidation for the entries covered by that administrative review. Section 1675(a)(1) mandates publication of the final results and requires that Commerce include in those results "notice of any duty to be assessed." It is fair to conclude that "notice" of the duty to be assessed is notice both to the importer, which will have to pay the duty, and to Customs, which will have to impose it. If publication of the final results constitutes removal of the suspension of liquidation, as we have held, then "notice" of the duty to be paid is, in effect, notice of the removal of suspension. Section 1675(a)(2) buttresses that point by specifying that the notice published in the Federal Register "shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination. . . ." Because Congress required Customs to base the amounts of the antidumping duty assessments on the contents of the final results as published in the Federal Register, it is fair to conclude that the publication of those final results

constitutes notice to Customs of the removal of suspension and Customs' obligation to proceed to liquidate the entries on the terms set forth in the final results.

It is true, as the trial court pointed out, that the Tariff Act sometimes uses the term "notice" or "notify" and at other times specifies publication in the Federal Register. The trial court found that those different uses convey two different concepts and that if Congress had intended for Customs to receive notice of the removal of suspension of liquidation simply by virtue of the publication of the final results in the Federal Register, it would have been unnecessary to include a notice requirement in section 1504(d).

While there is force to that point, we think it is a sufficient answer that section 1504(d) applies not only to the removal of suspension that occurs upon publication of the final results of an administrative review, but also to the removal of suspension in other contexts, including the removal of a court-ordered suspension of liquidation. In that setting, the removal of suspension occurs as the result of court action, not a Federal Register publication, and the required notice must be provided by a separate mechanism. For that reason, it makes sense for section 1504(d) to refer separately to the acts of removal of suspension of liquidation and notification of the removal. In the case of issuance of the final results of an administrative review, unlike the removal of a court-ordered suspension, the removal of suspension of liquidation is effected by Federal Register publication, an act that provides general notification to affected parties regarding the reported action. In that setting, there is no reason to interpret section 1504(d) to require that notice of the removal of suspension of liquidation be provided by a mechanism separate from the act that effects the removal of suspension.

■ Accordingly, we hold that suspension of liquidation was removed on February 12, 1996, when the final results of the administrative review were published in the Federal Register. We also hold that publication of the final results in the Federal Register constituted notice from Commerce to Customs that the suspension of liquidation on the subject entries had been removed. Customs did not liquidate the entries within six months of February 12, 1996, as required by section 1504(d). The entries were therefore properly treated as having been liquidated six months after February 12, 1996, at the 2.72% antidumping duty asserted at the time of entry by ITC.

*AFFIRMED.*