Slip Op. 18 - 177

# UNITED STATES COURT OF INTERNATIONAL TRADE

|                        |     |                                                           |
|------------------------|-----|-----------------------------------------------------------|
| ARBED AMERICAS, LLC,   | :   |                                                           |
|                        | :   |                                                           |
| Plaintiff,             | :   |                                                           |
|                        | :   |                                                           |
| v.                     | :   | Before: R. Kenton Musgrave, Senior Judge                  |
|                        | :   | Court No. 15-00095                                         |
| UNITED STATES,         | :   |                                                           |
|                        | :   |                                                           |
| Defendant.             | :   |                                                           |
|                        | :   |                                                           |

**OPINION**

[On cross-motions for judgment on challenge to denial of protest over rate of antidumping duties assessed by U.S. Customs and Border Protection, judgment for the plaintiff.]

Decided: December 21, 2018

*Robert S. LaRussa*, *Lisa S. Raisner*, and *Neil H. Koslowe*, Sherman & Sterling LLP, of Washington, DC, for the plaintiff.

*Hardeep K. Josan*, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the defendant. Also on the brief were *Chad A. Readler*, Acting Assistant Attorney General and *Amy M. Rubin*, Assistant Director. Of counsel on the brief was *Beth C. Brotman*, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Musgrave, Senior Judge: The parties cross-move for summary judgment pursuant to USCIT R. 56.3 on whether six entries of stainless steel plate in coils ("SSPC") from Belgium were deemed liquidated by operation of law. Also before the court is the plaintiff's motion for oral argument, but in view of the quality of the briefing on the matter, oral presentation is unnecessary. That motion can therefore be, and hereby is, denied, and for the following reasons, judgment will enter in favor of the plaintiff.

I. *Background*

The entries at issue are among numerous other SSPC entries subject to antidumping("AD") duty and countervailing ("CVD") duty orders. The SSPC was produced by ALZ, N.V. and was imported from Belgium by the plaintiff Arbed Americas LLC ("Arbed") in the latter half of 1999. In 2001, the U.S. Department of Commerce, International Trade Administration ("Commerce") published the final results of the administrative reviews of the AD and CVD duty orders for the periods of review ("PORs") that cover the entries in this case. *See Stainless Steel Plate in Coils from Belgium*, 66 Fed. Reg. 45007 (Aug. 27, 2001) (final admin. results of CVD order); 66 Fed. Reg. 56272 (Nov. 7, 2001) (final admin. results of AD order). Those results were challenged here, and preliminary injunctions ("PIs") were issued to enjoin, pending litigation, liquidation of SSPC from Belgium that had been produced or exported by ALZ, N.V. and entered during PORs relevant to those proceedings. *See* Compl. ¶7; Ans. ¶7; *see also Allegheny Ludlum Corp. v. United States*, Court No. 01-01091; *ALZ, N.V. v. United States*, Court No. 01-00834. Thus, pursuant to those PIs, in 2002 and 2003 Commerce issued blanket instructions to U.S. Customs and Border Protection ("Customs") not to liquidate any SSPC from Belgium that had been produced or exported by ALZ, N.V. and entered during the PORs until further liquidation instructions were provided. *See* Message Nos. 2178204 (June 27, 2002), 2283201 (Oct. 10, 2002), 3351206 (Dec. 17, 2003), attached to Def's Br. as Ex. A. Those instructions encompassed the entries at bar.

In 2004 and 2005, Commerce issued further liquidation instructions to Customs pertaining to such entries of SSPC. *See* Message Nos. 4083201 (Mar. 23, 2004), 5189204 (July 8, 2005), 5199201 (July 18, 2005), attached to Def's Br. in Ex. B. Regarding the AD order, Commerce

instructed Customs, in relevant part, to liquidate entries of SSPC from Belgium exported by ALZ, N.V. at a rate of 24.43%. *See* Message Nos. 4083201 (Mar. 23, 2004) and 5199201 (July 18, 2005), attached to Def's Br. in Ex. B. Regarding the CVD order, Commerce instructed Customs, in relevant part, to liquidate entries of SSPC from Belgium exported by ALZ, N.V. at a rate of 0.97%. *See* Message No. 5189204 (July 8, 2005), attached to Def's Br. in Ex. B.

In 2005, those liquidation instructions, of message numbers 5189204 and 5199201, were challenged here. Compl. ¶7; Ans. ¶7. *See Ugine and ALZ Belgium, N.V., Arcelor Stainless USA, LLC, and Arcelor Trading USA, LLC v. United States*, Court No. 05-00444 ("the *Arcelor* case"). The plaintiffs of the *Areclor* case requested entry of a PI against liquidation of 211 entries relevant to their case, *see* Court No. 05-00444, ECF No. 5 (July 22, 2005). Because Arbed was not a party thereto, the list of entries attached to the PI request did not encompass Arbed's entries.

This court initially denied the *Arcelor* case PI request. *See* Compl. ¶9; Ans. ¶9; Court No. 05-00444, ECF No. 20 (Aug. 17, 2005). On appeal thereof, the U.S. Court of Appeals for the Federal Circuit penultimately granted the PI requested at that level, pursuant to which Commerce instructed Customs "until further notice" not to implement the liquidation instructions issued in the above-mentioned message numbers 5189204 and 5199201. *See* Message Nos. 05252201 (Sep. 9, 2005) and 5300205 (Oct. 27, 2005), attached to Def's Br. as Ex. C. The Federal Circuit ultimately, on June 15, 2006, reversed the denial of the PI requested in Court No. 05-00444, the case was remanded for entry of a PI here, and on August 29, 2006, this court issued a PI enjoining The United States, Commerce, and Customs "from making or permitting liquidation of any of the unliquidated entries listed herein, and from taking any actions on any of the protests of entries listed herein"

("Order"). Court No. 05-00444, ECF No. 44 (Aug. 29, 2006). The Order listed the 211 entries of SSPC that were at issue in the *Arcelor* case and to which the Order applied. None of Arbed's six entries (at issue in the matter at hand) was included in the list of entries subject to the Order.

On August 31, 2006, Commerce sent Customs message number 6243201 implementing the Order. In this message, Commerce noted that the court had issued a PI in connection with the *Arcelor* case; that it had been "served with the above referenced injunction on 08/30/2006;" and that it and Customs had been enjoined "from taking any actions on any of the protests on entries listed in the injunction" and from "liquidation of the entries listed below", further instructing Customs that it should "not make or permit liquidation of any of the unliquidated entries listed herein" and "not take any actions on any protests of entries listed herein" and specifically listing the 211 entries of SSPC that were at issue in the *Arcelor* case and to which the Order and Commerce's instructions applied. In other words, message number 6243201 mirrored the Order. Again: none of Arbed's six entries was included among the 211 entries listed therein.

Customs did not, at that or any other previous time, affirmatively proceed to liquidate Arbed's six entries.

On October 1, 2007, the *Arcelor* case decided that Commerce's challenged liquidation instructions, which limited Commerce's relevant determination (that SSPC hot rolled in Germany and not further cold rolled in Belgium was not subject to the AD or CVD Order for SSPC from Belgium) to post-May 1, 2002 entries of SSPC from Belgium, were arbitrary and capricious, which the Federal Circuit affirmed on January 7, 2009.

As a result, in 2010 Commerce issued liquidation instructions to Customs for the AD and CVD duty orders. *See* Message Nos. 0291310 (Oct. 18, 2010) and 0309303 (Nov. 05, 2010), attached to Def's Br. as Ex. E. Regarding the AD order, Commerce instructed Customs to implement the instructions in message number 5199201 dated 07/18/2005 (which were a correction to Message No. 4083201 dated 3/23/2004) and to liquidate all entries of SSPC from Belgium exported by ALZ, N.V. at an AD rate of 24.43 percent. *See* Message No. 0291310 (Oct. 18, 2010), attached to Def's Br. in Ex. E. Regarding the CVD order, Commerce instructed Customs to implement the instructions in message number 5183804 dated 07/08/2005, and to liquidate all entries of SSPC from Belgium exported by ALZ, N.V. at a CVD rate of 0.97 percent. *See* Message No. 0309303 (Nov. 05, 2010), attached to Def's Br. in Ex. E.

Pursuant thereto, Customs liquidated the entries at issue on January 21, 2011 at an AD rate of 24.43% and a CVD rate of 0.97%. *See* Pl. Br. at Attach. 18. Arbed protested, arguing that the duty rates paid at entry were the proper rates, and that under 19 U.S.C. § 1504(d) its six entries were deemed liquidated six months after August 31, 2006 when Customs received Commerce's message number 6243201 concerning this court's Order in the *Arcelor* case, which applied only to the 211 SSPC entries listed in that Order and not to Arbed's entries. *See* Protest No. 1401-11-100205 (April 19, 2011). Arbed requested reliquidation of its six entries at the appropriate AD rate and reversal of the billing and interest associated with the liquidation of the entries on January 21, 2011. *See id*.

Customs denied the protest in accordance with Headquarters Ruling H169018 (Sep. 09, 2014). *See id*.

II.  *Jurisdiction and Standard of Review*

Jurisdiction is properly invoked here pursuant to 28 U.S.C. §1581(a) on the claim of a denial of a customs duty protest under section 515 of the Tariff Act of 1930, 19 U.S.C. §1515.  *See* Compl. ¶¶ 1,3.

The material facts are not in dispute: suspension of liquidation was removed in 2006 but the parties disagree as to whether Customs received notice that suspension had been removed in 2006 or in 2010.  The question being one of law, disposition via summary judgment is appropriate.  *See* USCIT Rule 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.  *Discussion*

A.  Legal Context

The Customs Courts Act of 1970 merged all decisions regarding an entry, *e.g.*, value, quantity, classification, amount of customs duties, *et cetera*, into a single action: the "liquidation." *See* 19 U.S.C. §1500.  Liquidation is treated as the "final" decision(s) of Customs on a particular entry and forms the basis of a protest thereof.  *See* 19 U.S.C. §1514(a) (all administrative decisions will become "final and conclusive upon all persons" -- including the United States and any officer thereof -- unless a protest against "liquidation" is filed or a civil action commenced here to contest the denial of a protest); *see*, *e.g.*, *Volkswagen of Am., Inc. v. United States*, 532 F.3d 1365, 1370 (Fed. Cir. 2008).  Of particular interest here, an entry must be liquidated within one year after the date the merchandise is entered for consumption unless the time for doing so is extended administratively or suspended by a statute or court order.  *See* 19 U.S.C. §1504.  If neither extended nor suspended, and if Customs does not affirmatively act to liquidate, the entry

> shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer of record. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

19 U.S.C. §1504(a)(1). And notwithstanding the final sentence above,[1] Customs' regulations provide that it will post notice of a deemed liquidation electronically on its website and also endeavor to provide courtesy notice. *See* 19 C.F.R. §§ 159.9, 159.11, 159.10(c)(3).

The Federal Circuit has held that in order for deemed liquidation to occur by operation of law, three elements must be met: "(1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice." *Fujitsu General America, Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002) ("*Fujitsu*") (finding that in order to have sufficient notice under the statute, there must be "an unambiguous and public starting point for the six-month liquidation period"), quoting *International Trading Co. v.*

---

[1] Prior to 1978, there was no time limit on liquidations, which left importers and sureties with uncertain liability for prolonged periods of time. *See*, *e.g.*, *Dart Export Corp. v. United States*, 43 CCPA 64, C.A.D. 610 (1956), *cert. denied*, 352 U.S. 824 (1956) (claim of retroactive assessment after four year delay in liquidation constituted deprivation of property without due process). Congress sought to remedy this situation by adding section 504, the deemed liquidation provision, to the Tariff Statute of 1930 through passage of the Customs Procedural Reform and Simplification Act of 1978, Pub. L. No. 95-410 §209, 92 Stat. 888, 902 (codified as amended at 19 U.S.C. §1504) ("1978 provision"). A significant point of contention between Customs and private industry during the House hearings was the absence of any notice requirement for deemed liquidations. *See* Customs Procedural Reform Act of 1977: Hearings on H.R. 8149 before the Subcomm. on Trade of the House Comm. on Ways and Means, 95th Cong., 1st Sess. 56, 117, 276, 375, 451 (1977). When the matter was taken up by the Senate Finance Committee, the Committee specifically amended to "require Customs to provide notice of liquidation in cases where an entry is deemed liquidated." S. Rep. 95-778, 31-32, 1978 U.S.C.C.A.N. 2211, 2242-43. But, for whatever reason, the 1978 provision as passed explicitly states notice of deemed liquidation "need not be given", which one commentator has interpreted as "strongly impl[ying] that since deemed liquidation was expected to occur at the importer's actual asserted rate, lack of notice would not prejudice his rights." Lawrence M. Segan, *Deemed Liquidation: Whose Rate is This Anyway*, 10 Fordham Int'l L. J. 689, 702 (1987).

*United States*, 281 F.3d 1268, 1275 (Fed. Cir. 2002) ("*International Trading*"). The provision

pertaining to those requirements, 19 U.S.C. §1504(d), is as follows:

> [W]hen a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry, unless liquidation is extended under subsection (b) of this section, within 6 months *after receiving notice of the removal from* the Department of Commerce, other agency, or *a court with jurisdiction over the entry*. Any entry (other than an entry with respect to which liquidation has been extended under subsection (b) of this section) not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record or (in the case of a drawback entry or claim) at the drawback amount asserted by the drawback claimant.

19 U.S.C. §1504(d) (italics added). Although this provision does not define the nature of the

"notice" of the removal of a liquidation suspension that Customs must receive to trigger the

six-month period for liquidation, the  issue has been addressed by this court and the Federal Circuit.

In *International Trading*, 281 F.3d at 1275-1277, the Federal Circuit held that, for

purposes of §1504(d), Customs "receiv[ed] notice" from Commerce that the statutory suspension

of the liquidation of entries of shop towels from Bangladesh had been removed on the date

Commerce published the final results of its administrative review of the antidumping order on those

towels in the Federal Register. *International Trading* noted that the date of publication provided an

"unambiguous and public starting point" for the six-month liquidation period. *Id*. at 1275. It also

pointed out that the date of publication in the Federal Register "does not give the government the

ability to postpone indefinitely the removal of suspension of liquidation," and avoids "messy factual

disputes" about when and what kind of notice Customs received that would force the courts to

"referee debates" on those questions. *Id*.

In *Fujitsu*, 283 F.3d at 1380, the Federal Circuit also affirmed this court's decision that, for purposes of §1504(d), Customs "receiv[ed] notice" that a statutory suspension of the liquidation of entries of television sets from Japan was removed on the date Commerce published a notice in the Federal Register of the Federal Circuit's final decision remanding to this court the question of the appropriate dumping margin for those television sets. Commerce did not give liquidation instructions to Customs in that notice, but the Federal Circuit, like this court, held that that did not matter. Relying on its decision in *International Trade*, the Federal Circuit concluded that the suspension of liquidation was removed "when the litigation came to an end," and Commerce's published notice of that fact provided "an unambiguous and public starting point for the six-month liquidation period." *Fujitsu*, 283 F.3d at 1381, quoting *International Trade*, 281 F.3d at 1275.

In *NEC Solutions (America), Inc. v. United States*, 27 CIT 968, 976-77, 277 F. Supp. 2d 1340, 1347-1348 (2003) ("*NEC*"), *aff'd*, 411 F.3d 1340 (Fed. Cir. 2005), this court also gave concrete meaning to the Federal Circuit's requirement that notice received by Customs be "unambiguous". In *NEC*, the plaintiff, a manufacturer and importer of television sets from Japan, claimed it was entitled to a refund of AD duties because Customs failed to liquidate related entries within six months of receiving notice from Commerce that a court-ordered suspension of liquidation had been removed. The notice in that case was an e-mail from Commerce to Customs, dated June 23, 2000, which indicated there "should be no unliquidated entries" of television receivers from Japan held by Customs for AD purposes except for television receivers from a manufacturer other than NEC as to which Commerce "continues to be enjoined." 27 CIT at 976, 277 F. Supp. 2d at 1347. NEC contended that its entries should have been deemed liquidated under § 1504(d) six

months later. The government argued that, under § 1504(d), Commerce's e-mail was not valid

notice to Customs of the removal of the suspension with regard to NEC for three reasons: (i) the

e-mail did not expressly notify Customs that the liquidation suspension had been removed for the

entries in question; (ii) the e-mail did not provide the precise duty rate to be applied; and (iii)

Commerce did not intend the e-mail to be notice of the removal of the suspension. According to the

government, because Customs has a "'merely ministerial role in liquidating antidumping duties'"

and "'merely follows Commerce's instructions,'" it could not have known from reading the e-mail

that the liquidation suspension had been removed. 27 CIT at 974, 277 F. Supp. 2d at 1345, citing

*Mitsubishi Elec. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994).

> All the government's arguments were rejected. With regard to the government's first

argument, the court observed:

> To anyone reasonably familiar with customs law, the juxtaposition [in the e-mail] of
> the mandate "there should be no unliquidated entries" with the exception for certain
> goods for which a Commerce liquidation order "continues to be enjoined" could only
> mean that there are no remaining suspensions, court-ordered or otherwise, on subject
> entries, except for those identified.

27 CIT at 977, 277 F. Supp 2d at 1348. The court then found that, reviewing the e-mail "as a

whole," it was clear that "a reasonable Customs official, with knowledge in these matters, would

have read the message to provide unambiguously that any suspension of liquidation on NEC's entries

had been removed." *Id*. On that basis, the court held the notice was "unambiguous." The court

summarily rejected the government's other arguments. It held that, under the Federal Circuit's

decisions in *International Trading* and *Fujitsu*, the e-mail constituted sufficient notice even though

it did not specifically mention suspension or the applicable duty rate. 27 CIT at 975, 277 F. Supp.

2d at 1346.  And it held that Commerce's intention in sending the e-mail was "irrelevant."  27 CIT at 977, 277 F. Supp 2d at 1348.  The Federal Circuit agreed with this court's reasoning and holding. 411 F.3d at 1345-1346.

This court reaffirmed and extended *NEC* in *American International Chemical, Inc. v. United States*, 29 CIT 735, 387 F. Supp. 2d 1258 (2005). The plaintiff in that case, America International Chemical ("AIC"), challenged the reliquidations by Customs of four consumption entries of potassium permanganate from Spain made in 1986.  AIC had asserted AD duties at the rate of zero at the time the entries were made, based on a prior administrative review by Commerce that found no dumping margin to exist for potassium permanganate from Spain.  In 1987, however, Commerce conducted another administrative review of covered consumption entries of potassium permanganate from Spain entered at any time during 1986.  On June 8, 1988, Commerce published the final results of that review, in which it determined that the AD duty margin that would apply to this product was 16.6 percent.  The foreign manufacturer challenged that determination here, and the court issued an injunction suspending liquidation of entries made in 1986, including those by AIC. After a series of remands, the court sustained Commerce's final determination that the AD rate should be 5.53.

On the date an appeal from the court's decision became time-barred, the decision sustaining Commerce's determination became final, the judicial injunction automatically dissolved, and the liquidation suspension was removed.  Thus, on February 2, 2000, Commerce sent Customs an e-mail addressing entries of potassium permanganate from Spain dating back to 1984.  This e-mail said that the records at Commerce indicated there "should be no unliquidated entries of

potassium permanganate from Spain . . . held by Customs for antidumping purposes during the period 01/19/1984 through 12/31/1999." 29 CIT at 738, 387 F. Supp. 2d at 1262. Nonetheless, Commerce subsequently issued liquidation instructions to Customs to assess antidumping duties at a rate of 16.6 percent, which it later revised to 5.53 percent, on AIC's entries of potassium permanganate in 1986. Customs followed those instructions and ultimately reliquidated the duties on plaintiff's entries at 5.53 percent in 2002.

AIC timely protested the four reliquidations, arguing that under §1504(d) its four entries were liquidated as a matter of law at the zero rate of antidumping duty six months after Customs received Commerce's e-mail of February 2, 2000, without liquidating those entries. Customs denied the protests and plaintiff brought suit in this court, making the same argument it had made to Customs. The government countered that the e-mail of February 2, 2000 did not constitute valid notice to Customs under §1504(d) for reasons echoing those it unsuccessfully advanced in the *NEC* case. Specifically, the government argued that: (i) the e-mail did not state that suspension of liquidation was removed for any entry made during the relevant period; (ii) the e-mail did not state that judicial review was completed; and (iii) the e-mail did not inform Customs of the amount of antidumping duty to be assessed against the entries.

The court treated the government's arguments as one argument, *i.e.*, that the e-mail was not unambiguous, and it rejected that argument. The court found that the statement in the e-mail, *i.e.*, that there "'should be no unliquidated entries of potassium permanganate from Spain. . . . held by Customs for antidumping purposes'" during the relevant period, "cannot be read in any manner consistent with the possibility that suspension of liquidation of the subject entries had *not* been

removed." 29 CIT at 746, 387 F. Supp. 2d at 1268 (emphasis in original).  Applying the "reasonable

and knowledgeable Customs official" standard articulated in *NEC*, the court stated that "[a]

'reasonable Customs official, with knowledge in these matters' could not interpret that statement to

mean that liquidation continued to be suspended."  *Id*., citing *NEC*, 277 F. Supp. 2d at 1348.  The

court concluded that this e-mail, taken "'as a whole,'" was as clear as the e-mail in *NEC* that the

liquidation suspension was no longer in effect.  29 CIT at 746-47, 387 F. Supp. 2d at 1268-69.

Two other decisions of the court are also noteworthy.

In *United States v. Great American Insurance Co. of NY*, 35 CIT 1130, 791 F. Supp.

2d 1337 (2011), the court rejected the government's argument that a published "notice of rescission"

from Commerce did not constitute valid notice under §1504(d) of the removal of an administrative

liquidation suspension because it was silent as to whether the suspension was removed.  "Language

explicitly stating that a suspension is removed is not required to remove a suspension of liquidation."

 35 CIT at 1156, 791 F. Supp. 2d at 1364.

And in *United States v. American Home Assurance Co.*, 40 CIT ___, 151 F. Supp.

3d 1328 (2016), the court repeated that point over the government's opposition.  The case upholds

that the standard for the sufficiency of the notice required by § 1504(d) is whether a reasonable and

knowledgeable Customs official would understand the notice to mean that a liquidation suspension

had been removed.  "[E]xplicit language stating that a suspension has been lifted is not required to

remove a suspension of liquidation so long as 'a reasonable Customs official, with knowledge in

these matters, would have read the message to provide unambiguously that any suspension of

liquidation on [the importer's] entries has been removed.'" 40 CIT at ___, 151 F. Supp. 3d at 1341, quoting *NEC*, 277 F. Supp. 2d at 1348.

## B.  Analysis

Arbed argues that its entries of SSPC from Belgium in 1999 were liquidated under §1504(d) six months after Customs received two notices of the removal of the suspension of liquidation and that all three conditions for a deemed liquidation were satisfied: (i) the suspension of liquidation imposed by the injunction pending appeal issued by the Federal Circuit in the *Arcelor* case had been removed; (ii) Customs received valid notice of the removal of the suspension from Commerce in its message number 6243201 and from the court, when Customs was served with the Order in the *Arcelor* case; and (iii) Customs did not liquidate Arbed's entries within six months after it received those notices.  Arbed contends that because it is undisputed that CBP did not liquidate Arbed's entries until January 21, 2011, the only contested questions in this case are whether the liquidation suspension imposed by the temporary injunction and injunction pending appeal issued by the Federal Circuit was removed, and whether CBP received valid notice of that removal. Arbed's answer to both questions is: yes.

First, Arbed explains, the injunction pending appeal issued by the Federal Circuit in the *Arcelor* case, which suspended liquidation of all entries of SSPC from Belgium, dissolved automatically when the Federal Circuit's mandate in the *Arcelor* case was issued on August 7, 2006. *Atlas Copco, Inc. v. EPA*, 642 F.2d 458, 470 (D.C. Cir. 1979) ("a stay issued pursuant to Federal Appellate Rule 8(a) dissolves automatically upon resolution of the appeal"); *FTC v. Food Town Stores, Inc.*, 547 F.2d 247, 249 (4th Cir. 1977) (an "injunction pending the appeal expires by its own

terms upon disposition of the appeal"). *See also NEC*, 277 F. Supp. 2d at 1342 ("the injunction suspending liquidation of Plaintiff's entries . . . was lifted when the decision became final"). It was precisely because the Federal Circuit's injunction pending appeal in the *Arcelor* case dissolved automatically on August 7, 2006 that on the same day Arcelor moved in this court for and obtained a PI to enjoin liquidation of its 211 entries of SSPC from Belgium.

Second, Commerce message number 6243201 gave unambiguous and public notice to Customs on August 31, 2006, that suspension of the liquidation of Arbed's six entries imposed by the Federal Circuit's injunctive orders had been removed. Message 6243201 was based on the CIT's PI of August 29, 2006, which emphasized that the PI enjoined exclusively the "liquidation of entries listed in the injunction" and enjoined Commerce and Customs "from taking any actions on any of the protests on entries listed in the injunction." The message instructed Customs in clear words: "Do not make or permit liquidation of any of the unliquidated entries *listed herein*." *Id*. (emphasis added). And for good measure, it listed each and every one of the 211 entries of SSPC to which the CIT's PI applied. None of Arbed's six entries was included in that list.

The court agrees that message number 6243201 is unambiguous, although that is not the only notice that is unambiguous and relevant here. Under the "reasonable and knowledgeable Customs official" standard adopted by the court and the Federal Circuit in *NEC* (and followed in *American International Chemical* and *American Home Assurance*), a reasonable CBP official knowledgeable in these matters could not have read message number 6243201 other than to apply this court's PI suspending liquidation of entries of SSPC from Belgium precisely to the 221 entries

listed in that Message, and to remove the Federal Circuit's suspension of liquidation as to all other entries of SSPC from Belgium, including Arbed's six entries.

As mentioned, Customs did not affirmatively act to post notice of deemed liquidation of Arbed's six entries. In denying Arbed's protest, Customs noted that Commerce had instructed it on September 9, 2005 and again on October 27, 2005 not to implement the liquidation instructions Commerce had issued on July 8 and July 18, 2006 until further notice. Customs said it "has a merely ministerial role in liquidating duties" and that, "[a]s such, C[ustoms] was unable to liquidate until receiving further notice." Letter from Myles B. Harmon, Director, Commercial and Trade Facilitation Division, to Suzanne McGrann, Assistant Port Director, Trade Compliance, U.S. Customs and Border Protection, p. 5 (Sep. 9, 2014). Customs said that neither the CIT's PI in the *Arcelor* case dated August 29, 2006, nor Commerce message number 6243201, "reference the Federal Circuit case, its outcome, or the ending of its stay of liquidation," and "[n]either contains language instructing C[ustoms] to liquidate any entries." *Id*. Thus, Customs' position is that it did not receive such express instructions from Commerce until 2010, when Commerce directed Customs to liquidate the instructions it had given on July 8 and July 18, 2006.

Such contentions, however, essentially repeat arguments already advanced by the government that the court and the Federal Circuit have considered and rejected. In *NEC*, for example, the court rejected the argument that Customs' "'mere[ ] ministerial role in liquidating antidumping duties'" excused its failure to read an unambiguous message from Commerce appropriately. 27 CIT at 974, 976-77, 277 F. Supp. 2d at 1345, 1347. The court has repeatedly stated that, "[l]anguage explicitly stating that a suspension is removed is not required to remove a

suspension of liquidation" under §1504(d). *American Home Assurance*, 39 CIT at ___, 151 F. Supp. 3d at 1341, quoting *Great American Insurance*, 35 CIT at ___, 791 F. Supp. 2d at 1364. *See also NEC*, 27 CIT at 975, 277 F. Supp. 2d at 1346 (the Federal Circuit "held that publication of notice of the decision in that case met the requirements of §1504(d) despite the fact that neither the court decision nor Commerce's Federal Register notice specifically mentioned suspension"), referencing *Fujitsu*, 283 F.3d at 1383; *American International Chemical*, 29 CIT at 746-78, 387 F. Supp. 2d at 1268-1269 (discussing appellate endorsement of the concept of public notice in the context of §1504(d)). And in *Fujitsu*, the Federal Circuit rejected the government's argument that the absence of liquidation instructions in a notice was fatal to the validity of a notice under §1504(e). *Fujitsu*, 283 F.3d at 1381. These decisions reflect the fact that Customs' "ministerial role" does not mean Customs is without the capacity to comprehend clear notice from Commerce or relevant judicial orders, *see* 19 U.S.C. §1504(d), and/or to take action without a specific directive to that effect from Commerce or the courts.

The defendant's arguments focus solely on the "clarity" of the August 2006 instructions from Commerce, arguing that they are ambiguous and that the first and only "unambiguous and public" notice to Customs that the suspension of liquidation for the entries at issue was removed occurred in 2010, when Commerce issued Message No. 291310 (Oct. 18, 2010) for the AD order and Message No. 0309303 (Nov. 05, 2010) for the CVD order. *See* Def. Br. at 10 and Ex. E. But these arguments do not address the valid notice Customs also received from the court regarding the removal of the suspension of liquidation. As indicated, under §1504(d), valid notice to Customs may come not only from Commerce but also from "a court with jurisdiction over the

entry." This court has such jurisdiction, and the Clerk of this Court certified that on August 29, 2006 it served this court's Order in the *Arcelor* case on Customs. This court's orders are not "pretend" orders (*i.e*, without effect unless "further" implemented or directed by Commerce) and Arcelor's counsel also served a copy of that Order on Customs on August 30, 2006. The Order plainly limited the continuing injunction on liquidation to the 211 listed entries, and it just as plainly excluded Arbed's six entries from that injunction by implication. In other words, the notice Customs received from this court plainly was valid notice under §1504(d).

In sum, as Arbed contends, all the conditions for deemed liquidation in 2006 were satisfied in this case. The entries covered by Protest No. 1401-11-100205 liquidated in 2006 by operation of law under 19 U.S.C. §1504(d), and the fact that Customs did not publically acknowledge that fact by posting notice to that effect on its website pursuant to its regulations is of no moment.

In passing, the court notes that Arbed contends the correct date of liquidation was August 7, 2006 upon issuance of the Federal Circuit's mandate in the *Arcelor* case. However, the court must abide by *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004), as argued by the defendant. *See*, *e.g.*, *Omni U.S.A., Inc. v. United States*, 11 CIT 287, 288 (1987). The relevant date was therefore September 13, 2006, when the 90-day period for petitioning the Supreme Court for certiorari from the Federal Circuit's decision of June 15, 2006 expired.

IV.  *Conclusion*

In view of the foregoing, Customs' affirmative liquidation of the entries at issue,

pursuant to Commerce's 2010 liquidation instructions, was *ultra vires*, without legal effect.

Judgment must therefore be entered for the plaintiff.

So ordered.


/s/  R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated:  December 21, 2018
          New York, New York